## Reyburn's Estate

86

Before Van Dusen, P. J., Stearne, Sinkler, Klein, Bolger, and Ladner, JJ.

*Paul Maloney, Carlyle H. Ross, Francis H. Sheetz,* and *Walter B. Gibbons,* for exceptants.

*Frank A. Moorshead* and *S. Lloyd Moore,* contra.

VAN DUSEN, P. J., January 16, 1942.—Testator, by his will, provided:

". . . no investment shall be made in any mortgage except such mortgage be a first lien upon good productive property in the City of Philadelphia, and the amount so invested shall not exceed two thirds of the assessed value of the mortgaged premises."

Certain mortgages were taken on property outside of Philadelphia and it is not questioned that the trustees must replace these investments with cash, and

that the mortgages should be then assigned to the persons contributing the cash.

Certain mortgages were on Philadelphia properties, but exceeded two thirds of the assessed value at the time the investments were made.

In some of these cases later increases in assessment, or reductions in the mortgage, brought the investment within the terms of the will. Exceptants urge that these cases are within section 230($f$) of the A. L. I. Restatement of the Law of Trusts as follows:

"Where the trustee is under a duty to dispose of trust property because it is not a proper trust investment, but before the trustee disposes of it it becomes a proper trust investment, the trustee is no longer under a duty to dispose of it, since it would be absurd to require the trustee to sell property which he might properly immediately repurchase."

As to the other mortgages, it is argued that the trustees are liable only for the excess of mortgage investment over two thirds of the assessed value, and exceptants cite section 229($b$) of the Restatement of the Law of Trusts as follows:

"If it is otherwise proper for the trustee to lend trust money on a mortgage upon real property, but he lends more than the proper proportion of its value, he is liable to the beneficiary for the loss of the excess."

Nevertheless, the auditing judge surcharged in the amount of the whole investment in both cases.

The argument of exceptants overlooks the consideration that these mortgages of both classes were improper investments from the beginning. The error is not in quantity only, but also in quality. One of the elements in the quality of a mortgage is that of quantity; i. e., what is the margin of value of the property above the amount loaned. Prudent mortgage investment requires a margin for fluctuation of value and marketability of the property—and quite as important —a substantial investment in the property by the

owner from the beginning so as to retain his interest, and induce him to strive to pay off the mortgage. The ideal termination of a mortgage investment is not foreclosure and resale of the property, but payment by the owner. A mortgage for 100 percent of the value would be imprudent, partly because it would leave the owner no such interest. A margin of one third gives more incentive than a margin of one fourth, and a too small margin affects the whole mortgage.

The assessment of real estate is the yardstick by which municipal taxes are measured. Ordinarily, it is to the advantage of the mortgagor, as well as to the mortgagee, to have the assessments kept as low as possible, in order to reduce the carrying charges of the property. The extent of the tax burden is one of the incidents which must be considered in determining the safety of the mortgage. If we were to accept the trustees' contention with respect to those mortgages where the assessments were subsequently increased, we would condone an anomalous situation created by the trustees' neglect. In such a situation the trustees would be benefited by a rise in the assessments, since they would be relieved of their liability for surcharge, even though the rise in the tax burden might impair the security of the mortgage investment held by the trust estate.

Furthermore, even if the trustees' contention were correct, it would not be enough merely to show that the assessments had been increased or the mortgage loans reduced. The burden would be upon them, even under their own theory, to show by affirmative evidence that at the time in question the mortgage loans were safe, sound, and proper investments. No such testimony appears in this record.

Our usual method of handling a surcharge for an improper investment, which is that adopted by the auditing judge, is to surcharge the whole amount of the investment and to allot the improper investment

to the trustees who pay the surcharge. This is the result of the right of election by the beneficiary to accept or reject an improper investment (see A. L. I. Restatement of the Law of Trusts, §210). This method also has the advantage of determining the amount of the loss automatically upon the basis of actual realized values instead of estimated values. The paragraph quoted from section 229 (*b*) of the Restatement above overlooks the right of election. It also overlooks the consideration that lending on too small a margin taints the whole loan.

It was said in argument that one mortgage—that on 5201 Arlington Street—has been liquidated by sale of the foreclosed property. If this is correct, the surcharge should be limited to the actual loss. The necessary facts may be stated in the schedule of distribution.

Exceptions nos. 1, 2, 3, 9, and 10 are dismissed and the other exceptions are dismissed so far as they cover the same points.

We are informed by counsel that the corporate trustee assumes sole responsibility for the mortgage on 6123 Locust Street, which was made before the individual trustee assumed office. This assumption, however, is subject to the argument against any liability, first, on the ground that the error in investment is cured by the later increase in assessment. As stated above, this objection is not well taken. Further, the corporate trustee submits that this mortgage appeared in a prior account, which was duly confirmed. Such confirmation is conclusive: Elkins' Estate, 325 Pa. 373; and the exceptions of both the individual and the corporate trustees are sustained so far as to lift the surcharge with respect to this item.

The trustees are a trust company and an individual. The surcharge is placed on both, and it is not denied that as between the beneficiary and the trustees both trustees are liable. The individual trustee, however, seeks to have the question of contribution between him-

self and the corporate trustee determined at this time. We think that this court has jurisdiction to determine this question of contribution, on the general principle that a court of equity, having jurisdiction of a principal cause of action, will settle all the collateral issues which grow out of it. This is particularly appropriate in determining such questions as contribution and order of liability.

All investments were initiated by the trust company. The individual trustee says that he knew nothing about the terms of the will, and nothing about the value of the properties on which mortgages were taken, or their assessed values or their locations; that his approval of the investments was given on the supposition that the trust company had investigated the facts, and that the investments were in all respects proper.

If the trust company had misstated material facts relating to the investment, as for example the amount of the assessment, or if the trust company had peculiar knowledge with regard to a mortgage which was not communicated to the individual trustee, it would appear that the trust company was primarily liable as between the trustees. But the proposition of the individual trustee in this case is in substance that the cotrustee who initiates an investment impliedly represents that it is a proper investment under the will and the law, and assumes responsibility for it, and that the other trustee, as between himself and his colleague, is justified in approving without himself looking into the matter.

We must look at this question just as though the two trustees were individuals. There is no presumption of greater competence in a trust company than in an individual: Linnard's Estate, 299 Pa. 32. We think that the proposal of an investment in the first instance by one cotrustee does not amount to a guaranty to his cotrustee of the propriety of the investment.

Exceptions nos. 12, 13, 14, and 15 of William S. Reyburn are dismissed.

The individual cotrustee was life tenant and had a power of appointment by will. In default of appointment the principal will go to the issue of this cotrustee. It is argued by the corporate trustee that this power of appointment coupled with the life estate gives to the individual trustee what is equivalent to ownership, and that there can be no surcharge for investments made with the approval of such an owner. Since the decision in Lyon et al. v. Alexander, 304 Pa. 288, it has frequently been said that a life tenant with a general power of appointment has an estate tantamount to a fee. This expression was accurate enough in that case and in other cases; but it is not to be detached from the facts of the cases and used as a general principle of law. In certain cases it has been held that those who claimed under a power of appointment could not complain of investments which had been made with the approval of the appointor in his lifetime: Curran's Estate, 312 Pa. 416; Perkins' Trust Estate, 314 Pa. 49; Wilbur's Estate, 334 Pa. 45. In the present case the appointor is living, and it is not known whether those who will be ultimately entitled to principal will claim under him or will claim in default of appointment. We do not think that the rule goes so far as to give the appointor who is a cotrustee the power to disregard the terms of the trust to the prejudice of those who will not claim under him, but will claim directly from the original testator.

This conclusion is without prejudice to any question which may arise if the ultimate remaindermen claim under the power of appointment.

Exception no. 4 is dismissed.

The auditing judge was asked and we are asked to "adapt" the final order of the court so that the life tenant will not get the benefit of the surcharge at least so far as the surcharge is paid by the corporate trustee. No suggestion is made in the exceptions or in the argument as to the form or plan of such a decree, and the

court is virtually asked to invent something appropriate. Even if we were ingenious enough to devise a proper decree, we should prefer to have suggestions come from the parties, with opportunity for criticism and counter-suggestion by opposing parties. Such a decree at this time must have several aspects in order to provide for the case of payment of the whole surcharge by the corporate trustee, or payment of part by the corporate trustee or payment of half by the individual trustee, or, indeed, for payment of all by the individual trustee. There is also the suggestion of sequestration of the life tenant cotrustee's income to pay his share of the surcharge, if not otherwise paid. This is an equitable proceeding, and it is not necessary to have everything in one final decree at one time. We think it will be sufficient for the present if we determine, as we have done, that the surcharge is to be against both trustees, and that each is entitled to contribution for one half against the other.

When the surcharge is paid and it is known who has paid it, an application may be made to the court for a further decree to determine the rights between the corporate trustee and the individual trustee which result from that payment. Our present judgment is without prejudice to such an application.

The exceptions of the corporate trustee nos. 6, 14, and 15 are dismissed.

Exceptions nos. 7, 11, 12, and 16 were withdrawn at the bar of the court.

All other exceptions (save as herein stated with respect to 6123 Locust Street and 5201 Arlington Street) are dismissed, and the adjudication is confirmed absolutely.