## Killey Trust.

Argued April 25, 1974. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Harry R. Nixon*, with him *Schneider, Nixon & John*, for appellants.

*J. Pennington Straus*, with him *Robert H. Louis, W. Joseph Harrison, III*, and *Schnader, Harrison, Segal & Lewis*, for appellee.

OPINION BY MR. CHIEF JUSTICE JONES, October 16, 1974:

This appeal arises from the final decree of the Orphans' Court Division of the Court of Common Pleas

of Philadelphia sustaining certain exceptions and dismissing certain exceptions to the adjudication entered upon objections to the third account of the Industrial Valley Bank and Trust Company (IVB), successor trustee under an inter vivos deed of trust executed by Jessie A. Killey. The account covered the period from September 22, 1948, to February 16, 1970. The court en banc sustained appellants' exceptions to certain transactions in United States Treasury obligations in 1962 and exceptions to the allowance of commissions to the trustee and of additional counsel fees. All other exceptions were dismissed. This direct appeal followed.

Appellants, remaindermen under the deed of trust, contend that IVB should be surcharged (1) for its total lack of attention in administering the trust during the period from September 22, 1948, through August 2, 1963, and (2) for failing to communicate with the settlor or any trust beneficiary with reference to their preferences as to investments during the period from August 1963 to February 1970, when the corpus of the trust was invested wholly in IVB's common trust fund.

Appellants initially claim that the court below erred in dismissing their exceptions because it applied the incorrect standard for judging the propriety of IVB's stewardship of the trust. We agree. This Court has not heretofore specifically addressed the issue of whether a stricter standard of responsibility should be exacted from trust companies as fiduciaries than from an ordinary trustee. In *Linnard's Estate*, 299 Pa. 32, 148 A. 912 (1930), this issue was earnestly pressed; however, the Court declined to make a ruling on that issue, opining that the record would not warrant any such advance in the law and that "[r]ulings which involve enlarged application of established principles to new conditions, and, when subsequently followed, give rise to what become known as new or advanced prin-

ciples, should be made only in cases where the facts relied on plainly appear and clearly call for such rulings." *Id.* at 39, 148 A. at 914. The court below recognized that "a detailed review of this record does indicate that this trust did not receive the attention of the trustee as it should have." We concur and therefore believe that this case occasions the appropriate opportunity to clarify the standard of care owed by a fiduciary who either has, *or* procured his appointment by representing that he has, greater skill than that of a man of ordinary prudence, and to eradicate any misconstructions which may have resulted from this Court's forbearance in *Linnard's Estate.*[1]

Since 1941 this Court has recognized that if a fiduciary *has* greater skill than that of a man of ordinary prudence, then the fiduciary's standard of care must be judged according to the standard of a man with his special skill. *See Stirling's Estate,* 342 Pa. 497, 504, 21 A.2d 72, 76 (1941). *See also Lohm Estate,* 440 Pa. 268, 273, 269 A.2d 451, 454 (1970); *Mastria Estate,* 413 Pa. 278, 281 n.3, 196 A.2d 653, 655 n.3 (1964); *Glauser Estate,* 350 Pa. 192, 196, 38 A.2d 64, 66-67 (1944); Restatement (Second) of Trusts, §174. Today we add that one who procures his appointment as trustee by *representing* that he has greater skill than that of a man of ordinary prudence will be held to have such skill as he had represented. *See* Restatement (Second) of Trusts, §174. In the present case, the corporate trustee held itself out as an expert in the handling of estate and trust accounts. It represented itself as being possessed of greater knowledge and skill than the average man. It was therefore under a duty to exercise a skill greater than that of an ordinary man, and the manner

---

[1] For instance in *Reyburn's Estate,* 43 Pa. D. & C. 85 (Phila. O. C. 1942), *Linnard's Estate* was improperly cited for the proposition that there is no presumption of greater competence in a trust company than in an individual.

in which investments were handled must accordingly be evaluated in light of such superior skill.[2] *E.g., Liberty Title & Trust Co. v. Plews,* 142 N.J. Eq. 493, 60 A.2d 630 (1948); *Union Commerce Bank v. Kusse,* 251 N.E.2d 884 (Ohio Probate Ct. 1969).

We are fully aware of the principle well-settled in this area of the law that one who seeks to surcharge a fiduciary for breach of trust must bear the burden of proving the particulars of his wrongful conduct. *Maurice Estate,* 433 Pa. 103, 249 A.2d 334 (1969); *Lerch Estate,* 399 Pa. 59, 159 A.2d 506 (1960). The rationale of the court below was that appellants had failed to discharge their burden of proof and therefore their claims for surcharge could not be sustained. Since that court, in ascertaining whether appellants had met their burden, misconstrued the duty of care incumbent upon the appellee, and since the question of the propriety of surcharging a fiduciary rests in the first instance with the Orphans' Court Division of the Court of Common Pleas, we remand to the court below for reconsideration in light of this opinion.

We do note that the record in no way supports appellants' claim that the trust was improperly administered during the period in which the corpus was invested in the common trust fund. Additionally, we dismiss as meritless appellants' argument that IVB should have consulted the settlor or the beneficiaries regarding investment policy. Consequently, reconsid-

---

[2] As early as 1917 the Orphans' Court of Lancaster County recognized that "[m]ore today is required of trust companies than the one-time ordinary care, diligence and good faith. Extraordinary care is now expected of them. . . ." *Rudy Estate,* 35 Lanc. L. Rev. 1 (Pa. O. C. 1917). In a similar vein, this Court in *Lohm Estate,* 440 Pa. 268, 269 A.2d 451 (1970), found it reasonable to require an attorney to comply with a greater standard of care than a layman, but a lesser standard of care than an attorney experienced in estate tax matters.

eration by the court below can be limited to that period commencing September 22, 1948, until and including that time in August 1963 when the entire trust portfolio was liquidated.[3]

Decree vacated in part and the matter remanded to the court below for proceedings consistent with this opinion.[4] Costs to abide the event.

---

[3] Since the court did surcharge appellee on two transactions during this period, even though applying a *lesser* standard of care than that required, these determinations obviously need not be reconsidered.

[4] Appellee has filed with this Court a motion to quash the appeal because of appellants' failure to comply with Rule 41 and Rule 44 of the Rules of the Supreme Court of Pennsylvania. Rule 39 provides that if defects in an appellant's Brief or Record are substantial, the appeal may be quashed. We do not find the alleged defects to be of a substantial nature and accordingly the motion to quash is denied.

---

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I join in the opinion of the Court. Like the majority, I believe that in light of the corporate fiduciary's representations of greater skill in the administration of trusts,[1] the orphans' court incorrectly applied the "prudent man" standard in assessing the trustee's performance during the years 1948 to 1963.[2] This matter must therefore be remanded to the orphans' court for adjudication of the fiduciary's management of the trust in view of the standard of care and skill it represented it possessed. If they desire, the parties on

---

[1] Advertising representations contained in a record stipulation are set out in the appendix to this opinion.

[2] I further agree that the disallowance by the orphans' court of commissions and fees is, on this record, entirely justified, as are the surcharges already imposed. Restatement (Second) of Trusts §§ 205, 243, comment d (1959) ; cf. *Girt Estate*, 452 Pa. 156, 164 n.7, 305 A.2d 372, 377 n.7 (1973).

remand will be permitted to offer additional evidence relevant to the care the trustee should have exercised.

As the majority correctly observes, our holding is mandated by section 174 of the Restatement (Second) of Trusts (1959).[3] Section 174 states: "The trustee is under a duty to the beneficiary in administering the trust to exercise such care and skill as a man of ordinary prudence would exercise in dealing with his own property; and if the trustee has or procures his appointment as trustee by representing that he has greater skill than that of a man of ordinary prudence, he is under a duty to exercise such skill." All fiduciaries— trust companies or otherwise—who procure appointment by claiming special skill in the administration of estates have a duty to exercise such skill. Of course, if a fiduciary does not claim greater skill, a "prudent man" standard would apply unless it can affirmatively be proven that the fiduciary in fact possessed greater skill.

However, I wish to emphasize that although a trustee is charged with the duties of preserving the corpus[4] and making it productive,[5] the court on remand must

---

[3] The Restatement is in harmony with section 7302(b) of the Probate, Estates and Fiduciaries Code, 20 Pa.C.S. § 7302(b) (Special Pamphlet, 1974) which provides in pertinent part: "Any investment shall be an authorized investment if purchased or retained in the exercise of that degree of judgment and care, under the circumstances then prevailing, which men of prudence, discretion and intelligence exercise in the management of their own affairs, not in regard to speculation, but in regard to the permanent disposition of their funds, considering the probable income to be derived therefrom as well as the probable safety of their capital. . . ." Section 7302(b) sets a minimum standard of performance. A trustee, however, may voluntarily commit itself to a higher standard by claiming greater skill. See also Uniform Probate Code § 7-302.

[4] Restatement (Second) of Trusts § 176 (1959).

[5] Id. §§ 181, 227.

recognize that even the most skillful trustee may not at all times be able fully to preserve principal or to produce maximum income. A trustee is not a guarantor or insurer of the trust's success. But if the court finds that in the exercise of its duties the corporate fiduciary failed to use the care and skill it represented it possessed, it may impose a surcharge for any depreciation in the value of the principal[6] or loss of income.[7]

Mr. Justice POMEROY joins in this concurring opinion.

---

[6] Id. § 205(a).

[7] Id. §§ 205(c), 207.

---

## APPENDIX

### "HERE ARE SOME ADVANTAGES OF A TRUST FOR YOUR FAMILY

"They will get expert assistance with their investments. A proper 'mix' of various kinds can be made to meet their needs, and changed as these needs or economic conditions vary.

"A living trust is first and foremost a plan for investment management of income-earning assets. Over the years, this is more important even than avoiding probate or minimizing taxes. For example, as trustee of your living trust, we would hold and protect the assets for you and other beneficiaries; invest the principal; keep the portfolio under continuing review, and reinvest the income and capital gains, or pay income to you or other beneficiaries, as you may direct.

"When you establish a carefully planned living trust with us, you keep all the benefits of property ownership but free yourself from worry about investment research and analysis in today's complex world. You assign that task to us as your investment manager.

. . . .

"The advantage to an individual beneficiary is that, whatever the objective of his trust, it benefits from our overall knowledge of finance and investments. When you name us a trustee, your securities are placed under the care of trust men who have had years of experience in managing trust funds. They regularly review the most reliable standard sources of statistical data, and have at their disposal all the facts and figures available to us as a financial institution. This knowledge and experience are what they apply to the problems of individual trust accounts.

"Furthermore, when you establish a living trust with us, you can relax in the certainty that our investment management is both constant and alert. You no longer need be concerned about trying to keep up with fast-moving market and financial developments. What has been your part-time worry is assigned to us as a full-time job on your behalf.

. . . .

"When you create a properly planned living trust with us as trustee, you retain all of the benefits of property ownership, but rid yourself of all the tasks of property management and investment. Here are some of the advantages of such a trust:

"You provide continuous and experienced management for your securities during your lifetime and for the benefit of your family after your death.

"A living trust is essentially an arrangement whereby you transfer certain assets to us as your trustee. We retain in the trust those assets that fit the investment program which you have approved, and we dispose of other possibly less desirable assets, reinvesting the proceeds to fit your program. . . ."