## Burchfield Trust

Opinion By McKenna, P. J., May 5, 1978:

This case is before us on objections of Helen Borland Burchfield, widow of decedent, to accounts filed by Union National Bank of Pittsburgh. The objections were filed on October 22, 1974 but were never brought before the court until April 5, 1978.

William Hodge Burchfield died on August 15, 1959, leaving a will dated January 3, 1957. On August 25, 1959 the will was admitted to probate and on the same date letters testamentary were issued to Helen Borland Burchfield and

the Union National Bank, the named executors. The will bestows broad powers on the trustees, that is, to manage real estate, exercise options, to subscribe for stock, to borrow money and to make distributions in cash or in kind. Paragraph Fifteenth (1), bestowing powers on the trustees, reads as follows:

"To have, hold, manage, care for and control the said estate, with full power in them to retain any and all investments owned by me as long as they, in their sound judgment, shall deem it to the advantage of the said estate and the beneficiaries thereof so to do, and to sell and convert the said investments at any time, and from time to time, and for such prices and upon such terms as they shall deem proper, and to invest the proceeds of the said sales and other funds of the estate as they, in their discretion, may deem wise and for the best interests of the estate, *without being confined in their choice of the said investments to such investments as fiduciaries are authorized or permitted by the laws of the Commonwealth of Pennsylvania to make;* with like power in them to alter, vary and change the said investment, at any time or times, and from time to time, and, and new investments make as aforesaid, and so on from time to time; and *without being subjected to liability for any loss which may be due to the depreciation in the value of any investments during the period they may hold the same.*" (Emphasis added.)

The executors filed their inventory on November 21, 1960. This shows personalty of $1,272,752.51 and no realty. The largest asset listed is an interest in the Joseph Horne Company represented by 23,305 shares of the common stock of the company at $32 per share, total value of the interest being $873,760. The executors filed their first and final account on September 2, 1961.

On September 6, 1974 the bank filed an account in each of the two trusts. Although Helen Borland Burchfield is named as co-trustee in the accounts, she did not sign these. The marital trust shows a balance of $1,269,481.92, including 14,500 shares of common stock in Associated Dry Goods Company at a carrying value of $138,434.72, or slighty over $9.50 per share. The stock has recently been selling in the low 20's. It had been acquired in exchange for stock in Joseph Horne Company on February 21, 1966, 1.2 shares of Associated having been given for each share of stock in the Joseph Horne Company.

Mrs. Burchfield filed her objections to the two accounts on October 22, 1974. The main thrust of the objections is stated in paragraph 5A, which reads as follows:

"Accountant has retained 14,500 shares of Associated Dry Goods common stock in the trust under Paragraph 14th Subdivision 1 of decedent's will and 8,400 shares of Associated Dry Goods common stock in the trust under Paragraph 14th Subdivision 2 of decedent's will in spite of the fact that the market value of said shares had decreased from $82.00 per share in 1968 to a present market value of approximately $17.00 per share for an aggregate decrease in market value of approximately $1,488,500."

The case was heard on April 5, 1978. At the hearing the 82 figure was amended to 55 as after the stock was quoted at 82 it split 3 for 2 making each share worth 1/3 less. Mrs. Burchfield testified, as did David J. Brubach, an executive vice president of Union National Bank. The deposition of attorney Alexander J. Barron, counsel for Mrs. Burchfield, was received in evidence. Mr. Barron's testimony had been taken on January 18, 1977. Mrs. Burchfield and her attorney stated that they did not wish the bank to resign as co-trustee. They expressly revoked the request which they had made to this effect in their letter to the bank under date of March 17, 1974.

We must examine the history of the case to determine if the bank's conduct with reference to Associated Dry Goods stock warrants a surcharge against it. Under amended decree of August 27, 1963 the trustee received 25,000 shares of Joseph Horne Company stock for trust A and 15,110 shares for trust B, or a total of 40,110 shares. On February 21, 1966 this was exchanged for 49,572 shares of Associated. Prior to July 1, 1968 the trustees had sold 17,572 shares, leaving them 32,000. On that date the stock split 3 for 2 and the trustees received an additional 16,000 shares, giving them a total of 48,000.

Mrs. Burchfield asserts that the bank had agreed to reduce the holding in Associated to 10% of the corpus of the two trusts; also that its officers had agreed to sell the stock before it fell below $40.

Counsel for the objector asserts that if the 22,900 shares of Associated had been sold at 40 the trust would have realized $916,000. This sum less the present value of the stock, 22,

or $503,800., produced a loss of $412,200. From this amount approximately $135,000 in capital gains tax should be deducted.

Under an alternate theory the objector suggests that as of January 31, 1973 the total value of trusts A and B amounted to $3,483,000. Pursuant to the alleged agreement the Associated stock was to be reduced to 10 percent of this, or $348,300. At the relevant price in January of 1973 this would mean that the holdings of the trustees in Associated should be reduced to 7,697 shares. Instead, the trustees retained 22,900 shares or 15,203 too many. If these shares had been sold on January 31, 1973 they would have produced receipts of $697,935. However, these same shares are worth only $334,499., indicating a loss of $363,436. from which must be deducted the income tax on capital gains engendered by the sale.

We find the aforesaid calculations to be too speculative. Counsel assumes that large blocks of the stock could be sold on certain dates at the then quoted price without depressing the market. Further, it was agreed by Mrs. Burchfield, her counsel and the bank officers that the stock should not be sold in the low 20's. There is a real possibility that the stock will recover. Thus, the objector failed to prove damages. In addition, there are other reasons why the objections must be dismissed.

Initially, we find that the bank did not enter into a contract with Mrs. Burchfield or her counsel, Mr. Barron, to sell all or a part of the stock prior to its reaching a price of $40.

We find further that the bank's handling of the Associated stock was not improvident. It did dispose of a substantial number of the shares. It was faced with several problems in pursuing this liquidation. Each time as sale was made a substantial capital gains tax had to be paid on the transaction. Also, a sale of any large block of the stock could conceivably depress the market and render less valuable the remaining shares.

If the stock had been sold as suggested by Mrs. Burchfield at the times given by her, the proceeds thereof would necessarily have been invested in other securities. In the

years between 1966 and 1974 there was a general depression in the market and any proceeds of the sales suggested would necessarily have been invested in other securities which may likewise have declined in value. Thus, there is no accurate basis to measure the loss to the trusts even if the bank had acted as Mrs. Burchfield now suggests it should have.

Counsel for the objector cites three principles which he asks us to apply in this case.

The first principle cited is that the bank, being an expert in investment matters and having held itself out as such, must be held to a higher degree of skill in managing trusts than an ordinary person. *Estate of Killey,* 457 Pa. 474, is cited in support of this doctrine. We agree with the rule. We find, however, that the trustee exercised the care and skill required of it in managing the estate under consideration. The bank officers met constantly throughout the administration of the trusts with Mrs. Burchfield and her counsel. The portfolios of the two trusts were reviewed periodically by employees in the investment department and tax section of the bank. The decisions reached by the trustee were based on sound reasons. The fiduciary may not be held liable merely because it did not sell more rapidly the stock which appeared to be a sound investment but which, admittedly, did decline drastically between 1966 and 1974.

Second. The will provides, in paragraph Fifteenth (1), that the trustees shall not be subject to:

> "liability for any loss which may be due to the depreciation in the value of any investments during the period they may hold the same."

Counsel for the bank relies on this language as exculpating the bank from surcharge here. The attorney for Mrs. Burchfield insists that, notwithstanding the phrase, the fiduciary must still be held to the degree of care and skill required of it. Since we have found that the bank acted prudently, we need not consider the language of the will exonerating the trustee from surcharge by reason of depreciation on securities which the testator himself had held.

Third. It is admitted that the overall picture of management of the two trust estates presents a very favorable pic-

ture. In 1962, at the time of the inception of the two trusts, the total income therefrom was $49,071, the non-taxable portion thereof being $1,090. In 1974 the total income from the two trusts amounted to $122,193, $58,052 of which is non-taxable. The principal of the trusts has done equally well. The inventory filed in the decedent's estate shows total assets of $1,272,752.00. On February 11, 1974, per exhibits 26 and 27, the market value of the securities in trust A amounted to $1,569,719 and those in trust B to $1,122,346, a gross estate of $2,692,065. It must be noted too that the testator made substantial monetary bequests which would reduce the amount of the inventory which passed to the trustees. The bank accomplished this even though it was obliged to pay fairly large amounts in capital gains taxes when shares of Associated were sold. Counsel for objector, however, argues that notwithstanding the fine performance of the bank on the total portfolio, it may not for this reason escape liability for its mishandling of the stock of Associated. The attorney cites *Tyler's Est.*, 5 D & C 317 in support of this principle. There the trustee was not permitted to set up gains which he had made in non-legal investments against losses he had incurred in other similar transactions. The case is not apposite to the case at bar. The trustee did not violate any of the conditions imposed on it by the testator. However, even if we do ignore the benefits resulting to the trusts by the trustee's care and skill in handling them, we still find, as we have stated above, that the Union National Bank may not be surcharged for any loss alleged to have occurred because of its conduct with reference to Associated stock.

The objections will be dismissed and a decree will be entered in accordance with this opinion.