Freedman Estate

Before Zavarella, A.J., Watson, Eunice Ross, Schwartz and Rahauser, JJ.

*Daniel M. Berger* and *Myron B. Markel*, for plaintiffs.

*W. Gregg Kerr*, for defendant.

OPINION BY EUNICE ROSS, J., DECEMBER 19, 1980:

Before the court en banc are two matters. One is the preliminary objections of Equibank to a pleading styled "complaint" filed by natural guardians on behalf of minor trust beneficiaries Nancy, Earl A. and Lee Niehaus, and by adult beneficiary Susan Peters, as individuals and as representatives of a class. This complaint in trespass and assumpsit alleges counts of negligence, breach of fiduciary duty, breach of con-

tract and misrepresentation to investors, settlors and beneficiaries by the bank and its predecessor, Western Pennsylvania National Bank, who were trustees of the testamentary trusts made April 1, 1967, by Ruth B. Freedman who died April 15, 1971. The complaint asks for compensatory and exemplary damages on behalf of the individual and class plaintiffs.

The individual plaintiffs are some of the beneficiaries of the spendthrift trusts created out of the Ruth B. Freedman estate which was divided into shares representing decedent's four nieces or nephews who had children living at her death. Each share was to be administered separately, income capitalized and proportionate distributions of income and principal made as each beneficiary reached the age of 25. The trustee had broad investment powers, the right to diversify and the right not to be limited to legal investments. Distribution could be made in kind or in cash.

Each of the four trusts received $19,656.19 as original principal. The trusts were for the children of Patricia Peters, of Lee Niehaus, of Earl A. Niehaus and of Eleanor Craig.

Upon the occasion of Susan Peters' attaining 25, the bank filed an account of its administration which was audited before another judge of this division. Susan Peters' objections to the account were dismissed by decree dated October 31, 1980, sustained by the court en banc December 1, 1980.

No other individual plaintiff can now be entitled to present distribution because all are minors.

Also pending before the court en banc is the petition of plaintiffs to remove the class action to civil division.

The complaint was filed first in the civil division on February 15, 1980. Equibank filed preliminary objections thereto raising *inter alia* the issue of jurisdiction. By order dated May 19, 1980, the jurisdictional objection was sustained and the case transferred to the orphans' court division. The bank was in the same order granted leave to pursue additional or undisposed of preliminary objections after transfer to the orphans' court. The undisposed of original and additional preliminary objections to plaintiffs' complaint are before us.

I. *Equibank's Preliminary Objections*

(1) *Conformity to Orphans' Court Practice*

Equibank objects that plaintiffs have failed in this orphans' court proceeding to conform to the practice established by statutes and local and Supreme Court rules. It asks that the complaint be stricken.

Plaintiffs began this action now transferred to the orphans' court with a pleading called a complaint, which was served by the sheriff of Allegheny County, rather than by a petition for the issuance of citation directed to Equibank to show cause why relief should not be granted. Such latter procedure is statutorily established and embodied in orphans' court rules as the proper orphans' court practice.

Section 761 of the Probate, Estates and Fiduciaries Code of June 30, 1972, P.L. 508, 20 Pa. C.S.A. 761, as amended provides:

> "All applications to the orphans' court division shall be by petition in the form prescribed by general rules and shall be attested either by an affidavit or by a verified statement. In the case of the latter alternative, the statement shall set forth that it is subject to the penalties of 18 Pa. C.S. §4904 (relating to unsworn falsification to authorities)."

Rule 10, Section 1, of the Allegheny County Orphans' Court Rules, requires the filing of a petition and sections 1(d) and 3 set forth necessary allegations such as the names of all interested parties and requires that the petition contain a proposed decree showing the relief sought. See also Supreme Court Orphans' Court Rule 3.4(b).

Under section 764 of the Probate, Estates and Fiduciaries Code of June 30, 1972, *supra*, 20 Pa. C.S.A. 764, it is further provided:

> "Jurisdiction of the person shall be obtained by citation to be awarded by the orphans' court division upon application of any party in interest. The citation shall direct the party named therein to file a complete answer under oath to the averments of the petition on or before a certain day . . . not less than ten days after . . . service . . ., and to show cause as the decree of the division shall provide."

See also Supreme Court Rule 3.5, local orphans' court rule 10, §6.

A complaint served by the sheriff does not comply with the division practice statutorily mandated that a petition be filed praying for a citation and that jurisdiction over the person be obtained by a citation directing respondent to show

cause why the prayer of the petition should not be granted. (There are no "rules" issued in the orphans' court as the bank sometimes argues.) Even though *in rem* jurisdiction is the rule in estates where property is within Pennsylvania, a citation is still required as the highest form of notice. See *Hicks Est.*, 414 Pa. 131, 134, where the court treated an *in rem* proceeding as being *in personam*. An answer to the petition must be filed on or before the return day.

If fiduciary mismanagement is the core of the petition, the court after the return date may order the fiduciary to file an account thereby exposing to public scrutiny all its dealings with the fund allegedly mishandled for whatever period of time an account is necessary and proper. Advertising the filing of the account and its call for audit is notice to all parties such as beneficiaries, creditors, taxing bodies or other interested persons of their rights to object. Objections to the account pinpoint specific mismanagement or claims of interested persons. The issues are joined and a separate hearing may be held so that the facts of mismanagement or relating to claims may be proved or disproved. Thereafter, the court finds facts, applies the law thereto, sustains or dismisses the objections as to the fiduciary's account of its stewardship and a decree of distribution is entered. If the fiduciary mismanaged causing a loss, the fund will be replenished by surcharge of the fiduciary. No other procedure can adequately protect all parties: *Real Estate Savings & Trust Co. v. Lewis*, 340 Pa. 86, 88 (decedent's estate).

This procedure is statutorily approved. See section 762 of the Probate, Estates and Fiduciaries Code of June 30, 1972, *supra*, 20 Pa. C.S.A. 762, providing that this division "may decide or dispose of any question relating to the administration or distribution of an estate or trust and exercise any of its powers in respect thereof upon the filing of an account or in any other appropriate proceeding." The section further notes the account may be complete or only relate to the issues raised.

Sometimes mismanagement may require other procedures such as fiduciary removal but even in this situation, as in the surcharge, an account must be filed unless the fiduciary never

received the funds or never made any changes in the funds as received.

The "complaint" is not in conformity to statute and law and will be stricken. The plaintiffs will be allowed twenty days from date of our order to proceed by petition and citation: *Stein Est.*, 49 D. & C. 2d 460, 462-463.

*(2) Availability of Class Actions in Orphans' Court Division*

May the class action procedure be utilized in this orphans' court proceeding? It is argued by the bank that the requirements of proceeding by complaint in a class action bar such an action in the orphans' court division: Pa. R.C.P. 1703 (a) (b), and explanatory notes. Thus, it is contended such action could not be brought in the orphans' court division because its procedure requires applications by petition and the issuance of a citation and excludes proceeding by the complaint mandated by Pa. R.C.P. 1703 which would be served by the sheriff's office.

The class action in the instant case relates to the management of "common trust funds" held by the bank for all trust beneficiaries and investors "whose assets at any time have been invested by defendant in defendant's common trust fund and who have suffered financial losses as a result of the depreciation in value of the assets . . ." (complaint, paragraph 8).

Thus, the action relates not only to trust beneficiaries but also to "investors" whose funds have been put in common trust funds. Every trust instrument or will creates different duties as to management and investment and has different purposes, different objectives which must be carried out by the fiduciary. Every contact with the bank by an "investor" whose fund is invested in like manner creates different goals and powers in the bank. Those *not* involving a trust, a decedent's or absentee's estate, a minor's or incompetent's estate may be outside this court's jurisdiction. But as to those within orphans' court jurisdiction, each one must stand on its own feet because each is as individual as each estate beneficiary, each decedent, each settlor, each life tenant, each remainderman, each minor and each incompetent. Every investment, sale, reinvestment, liquidation has to be reviewed in the light of the needs of all parties interested in each estate, the surrounding

circumstances, the direction of the creator of the fiduciary relationship, the statutory requirements, the varying duties of the bank as trustee, guardian,. personal representative or agent.

All kinds of estates are invested in common trust funds. The bank has a duty to liquidate a decedent's estate for payment of creditors and beneficiaries. Investment here when necessary would generally be short-term: *Estate of Pitone,* Pa. , 413 A.2d 1012, 1016. An incompetent's estate usually should be preserved in kind unless it is necessary to protect principal or generate more income: *Commonwealth ex rel. Flowers v. Flowers,* 326 Pa. 138, 140. The interest of a life tenant may be to secure income or invade principal while the interest of a remainderman may be to see a principal growth at the expense of income. The circumstances of a minor's estate determine whether income, capital preservation or both are paramount.

The standard of care of a fiduciary must be determined in the first instance from the individual instrument creating the duty: *Estate of Niessen,* Pa. , , 413 A.2d 1050, 1052. This would also apply to "investors" whose funds may be outside orphans' court jurisdiction.

The "common" character of the common trust funds does not mean all persons with an interest therein are owed the same duty. See *Killey Trust,* 457 Pa. 474, 477, which involved a common trust fund and where in issue was the trustee's duty and standard of care under the particular instrument.

One thing is certain. A loss or a gain in common trust funds has to be related to a period of time. Today's loss is supplanted by tomorrow's gain. The real question is not today's loss but whether today is the day when the loss is to be more than a loss on paper but is to be a loss realized by reason of the failure to distribute all that should have been or will now be distributed to the complaining party. Without a loss accompanying a right to distribution there is no way to pinpoint actual loss until such time as it is sustained.

Twenty years ago no one complained about grand expansions of common trust funds because of general market expansions. General market conditions of loss or gain occur daily with a resultant daily rise or fall on paper of common trust

funds. Real losses occur only if an income beneficiary is denied regular income in accordance with the settlor's intent and directions due to mismanagement of the fiduciary or if a remainderman's share has been unduly diminished by reason of a breach of the fiduciary's duty or mismanagement. But not all losses are a result of mismanagement or are a breach of duty. On what day is this court to look at common trust funds to calculate the loss in a class action? If for each day of loss, every transaction will have to be examined, then reviewed with reference to the individual creating instruments and the individual needs of each interested party, a practice *ad infinitum*.

The bank holds many trusts or estates as co-fiduciary with other persons who would have to be joined in the action. All beneficiaries, creditors, interested persons in all funds invested by the bank in common trust funds must be notified. Many are minors or incompetent. Many are not yet born. Guardians *ad litem* for non sui juris beneficiaries *in esse* or trustees *ad litem* for those unborn or *in posse* might have to be appointed to represent those without guardians or actual or virtual representation. Some beneficiaries might be deceased.

If the bank prevails, its costs might be assessed against all funds subject to the suit which might not only be sustantial if litigation is protracted but which also would also diminish the fund: *Hodgson's Est.*, 158 Pa. 151, 156.

On the basis of these public policy matters considered in the light of the procedure set forth in Pa. R.C.P. 1703 it is clear a class action suit in the orphans' court for mismanagement of any fiduciary funds subject to orphans' court jurisdiction is not within the public policy of the Commonwealth as statutorily and judicially defined. This is particularly true in light of the peculiarly appropriate way of handling all issues relating to common trust fund management by the account-objection procedure of the orphans' court. The transactions are recorded in each account by date for the period of time accounted for. The party objecting may do so in the most informal manner in this county by stepping forward at audit with oral objections. Written objections are more common here and in other counties. The fiduciary is then required to go step by step through its investment procedures for the relevant time and may, if not acting according to its duty and

thereby causing a loss, be surcharged: *Killey Trust,* 29 FIDUC. REP. 437, 439.

No one rich or poor is barred from raising objections in the orphans' court and a class action is not to be used to circumvent the salutory practice of protecting all parties under orphans' court jurisdiction: *Lilian v. Commonwealth,* 467 Pa. 15, 20.

Parties not sui juris or unrepresented are protected by appointments of guardians or trustees ad litem or even masters or counsel: Probate, Estates and Fiduciaries Code of June 30, 1972, *supra,* §751, 20 Pa. C.S.A. 751.

No one's substantive rights are herein denied by the denial of a class action.

The class action allegations in the complaint and its class action style will be dismissed as impertinent matter.

### (3) Punitive Damages

The bank asks the court by preliminary objection to strike any allegations in the complaint relating to punitive damages. Plaintiffs' complaint, paragraph 24, claims punitive damages because of "wilful and reckless" conduct by the bank.

The orphans' court has been called a court of equity governed in minute detail by the Probate, Estates and Fiduciaries Code of June 30, 1972, §§101 *et seq.,* 20 Pa. C.S.A. *et seq.*[1] See *Burr Est.,* 381 Pa. 547, 548. Although proceeding by equitable principles, it is not necessarily governed by the practice in equity: *Estate of Hahn,* 471 Pa. 249, 252. The best definition of the powers of the division is found in section 715 of the Probate, Estates and Fiduciaries Code of June 30, 1972, 20 Pa. C.S.A. 715, which states the division has "all legal and equitable powers . . . required for or incidental to the jurisdiction it exercises."

Its jurisdiction under section 711 of the Probate, Estates and Fiduciaries Code of June 30, 1972, *supra,* 20 Pa. C.S.A. 711, is *inter alia* to supervise the administration and distribution of certain estates. If a fiduciary mismanages, the court may surcharge him. It may also remove him or enjoin him from improper actions. It has the power to attach, sequester,

---

1. See Pennsylvania Orphans' Court Rule 3.1 which directs conformity to equity practice in the absence of rule or statute.

allow execution, allocate costs, allow claims. See the Probate, Estates and Fiduciaries Code of June 30, 1972, §§769, 711, 772, 781, 791, 3183, 7186, 20 Pa. C.S.A. 769, 771, 772, 781, 791, 3183, 7186. Surcharges are treated by decree as a liquidation of the loss caused by mismanagement and are based on actual losses including the cost of litigation. A surcharge may be reduced to judgment.

The purpose of the surcharge is to reimburse beneficiaries for losses due to mismanagement and not as a punitive, disciplinary measure and thus punitive damages by way of surcharge are improper: *Killey Trust,* 29 Fiduc. Rep. 437, 439. This is particularly true when objectors make no specific objection but are protesting the entire investment policy of the trustee for the period in question and attempting to substitute an investment formula of their own which is highly uncertain and speculative: *Idem,* 441.

Nowhere in the Probate, Estates and Fiduciaries Code is it provided that a wilfully, reckless fiduciary is also subject to exemplary damages although such a fiduciary might be required to pay for actual losses, counsel fees for the objectors and litigation costs. He may also be barred from any compensation. But none of these remedies which have accrued over hundreds of years of practice may be called punitive damages. They are equitable in nature and the orphans' court should be permitted to continue to apply in each case of mismanagement before it the remedy equitably called for under the facts of the case as established by statutory and case law.

The objection as to punitive damages is sustained and such allegations will be stricken from the complaint.

## II Plaintiffs' Petition to Transfer to Civil Division

Although the jurisdictional issue was decided previously by Judge Bernard J. McGowan of the civil division, the issue is raised again by the petition of plaintiffs to transfer the class action to the civil division on the ground orphans' court cannot try a class action and there is a pressing need for one in order to right certain wrongs that cannot be remedied other than by a class action in civil division. The class action allegations of paragraph 8 of the complaint state that the class action is brought by plaintiffs as representatives of a class of trust beneficiaries and investors in the bank's common trust fund if

at any time there were such an investment and a resultant financial loss by depreciation.

Most of the issues raised as to plaintiffs' public policy argument have already been dealt with in the discussion portion of this opinion relating to the preliminary objection as to the availability of class actions in orphans' court. There are no wrongs alleged by plaintiffs which cannot better be righted by an orphans' court accounting procedure rather than by a class action. See the prior discussion.

It may be well be true that there are a few ancient trusts or guardianships not subject to orphans' court jurisdiction. There may be some "investors" (sui juris persons giving the bank a power of attorney to invest their funds) who are not subject to orphans' court jurisdiction who might attempt a civil division suit but even they are individual cases each with different duties and requirements unlike persons like depositors who have the same contract with the bank. But excluded from those who might theoretically be subject to a civil division action are all the great bulk of investors, settlors, and beneficiaries whose fund management is within this division's jurisdiction by statute. As the jurisdictional provisions indicate, there are few funds now outside orphans' court.

Section 711 of the Probate, Estates and Fiduciaries Code of June 30, 1972, *supra*, §711, 20 Pa. C.S.A. 711, provides for the *mandatory* exercise of orphans' court jurisdiction in the following instances: ***

Aside from old untransferred estates, pension, bondholders, escrow and creditor trusts and the sui juris investors who make the bank their agent, it is difficult to envision any civil division jurisdiction and even if it exists the same diversity of duties and rights arising under various agreements would make a class action certification unlikely as discussed above. No such relationships are alleged. Indeed, only the averments as to testamentary trusts are specific in the complaint. We will not speculate as to the meaning of the term "investors" which is coupled with the words "settlors" and "beneficiaries".

Although section 952 of the Judicial Code of July 9, 1976, P.L. 586, Pa. C.S.A. 952, provides each division of the common pleas court is vested with the full court jurisdiction, it also provides that the business of the court may be allocated among

70

the divisions. Such is done in a mandatory fashion by section 711 of the Probate, Estates and Fiduciaries Code of June 30, 1972, *supra*, 20 Pa. C.S.A. 711. See *Estate of Croessant*, 482 Pa. 188, 193; *Kohl v. Lentz*, 454 Pa. 105, 109; *Eberhardt v. Ovens*, 436 Pa. 320, 324-325; *Esposita v. Penden*, 9 D. & C. 3rd 712, 715.

The only named plaintiffs are trust beneficiaries under a testamentary trust.

The motion for transfer to civil division will be denied.