541 A.2d 756

**In re TRUST OF Isabella W. MUNRO, Katharine S. Weibley, Executrix of the Estate of Richard W. Weibley, Deceased and William A. Cope, Objectants,**

v.

**COMMONWEALTH NATIONAL BANK, Trustee.**

**Appeal of Katharine S. WEIBLEY Executrix of the Estate of Richard W. Weibley, Deceased.**

Superior Court of Pennsylvania.

Argued Feb. 2, 1988.

Filed May 4, 1988.

G. Thomas Miller, Harrisburg, for appellant.

Robert C. Spitzer, Harrisburg, for appellee.

Before CAVANAUGH, OLSZEWSKI and POPOVICH, JJ.

CAVANAUGH, Judge:

The issue before us in whether the court below properly refused to surcharge a corporate trustee for retaining its own stock as principal of the trust.

By Deed of Trust dated July 29, 1932, Joseph Munro and Isabella W. Munro, his sister, placed designated assets in trust, including shares of stock in Carlisle Deposit Bank and Trust Company which was named as sole Trustee. The trust agreement stated, *inter alia* that the Trustee was:

> to hold all stock of the Carlisle Deposit Bank and Trust Company which may come into hands of trustee under this agreement and pay the net income received therefrom, from time to time, to parties of the first part, [the Settlors] in equal shares, during their joint lives and to the survivor of parties of the first part during his or her life and upon the death of said survivor, then to distribute such dividends as received by the trustee in equal shares

to the following named grand-nephews of parties of the first part or to such of them as may be living at the death of the last survivor of the parties of the first part, to wit: Edward Weibley, Richard Weibley and William Cope all grand-sons of our deceased brother William S. Munro, for and during their natural lives and the life of the survivor of them, the share of any one of them dying to be paid to the survivor or survivors and upon the death of the last survivor of said grand-nephews to distribute said stock in accordance with the last wills and testaments of the said grand-nephews and a power of appointment by will is hereby conferred upon each of said grand-nephews as to that portion of stock on which he receives the income, distribution however to be deferred as above provided until the death of the last survivor of said grand-nephews.[1]

The trust agreement also provided:

It is expressly agreed that Trustee shall not be liable for accepting and retaining investments not within the laws of Pennsylvania defining lawful investments for trust funds nor for any losses resulting from the depreciation of any such investments.

The settlors are deceased. In 1985, the Commonwealth National Bank, the successor Trustee, filed its First and Partial Account in the Orphans' Court Division of Cumberland County, Pennsylvania. By that time, Edward Weibley had died. The income beneficiaries were Richard Weibley and William Cope. Edward Weibley had exercised his pow-

---

1. The trust agreement also provided as follows concerning trust assets other than stock in Carlisle Deposit Bank and Trust Company:

And in trust nevertheless, as to all the rest of the securities and investments coming into the possession of the trustee, to pay the income derived therefrom to parties of the first part in equal shares during their joint lives and to the survivor of parties of the first part during his or her life and upon the death of said survivor to distribute the same in accordance with such instruction in writing lodged with trustee as may be given by the last survivor of parties of the first part and in the absence of such instructions then according to the intestate laws of the Commonwealth of Pennsylvania, as if the said personal assets constituted the absolute property of said last survivor.

er of appointment and designated Patricia Hain and Barbara Alexander as beneficiaries of one-third of the trust principal upon the death of the survivor of Richard Weibley and William A. Cope. Mr. Weibley and Mr. Cope, the income beneficiaries, filed objections to the account and sought to impose a surcharge on the trustee and other relief.[2] After the account was filed, an auditor was appointed who conducted hearings and filed a report in which he recommended that the trustee not be surcharged, but should be allowed to invest two-third's of the principal in legal investments other than in its own stock and one-third to be held in shares of Commonwealth Financial Corporation, the successor bank to Commonwealth National Bank.[3] Weibley and Cope filed exceptions to the auditor's report. By Order of July 8, 1987 the court, by Sheely, P.J., directed that the Auditor's Report be confirmed absolutely and modified the trust agreement in accordance with the report. In the meantime, Richard W. Weibley died and Katharine S. Weibley, Executrix of his estate, filed an appeal to this court. Mr. Cope did not appeal.

In our opinion, the court below properly refused to impose a surcharge upon the appellee. A surcharge is the penalty imposed for failure of a trustee to exercise common prudence, skill and caution in the performance of its fiduciary duties and is imposed to compensate beneficiaries for the loss caused by the fiduciary's want of due care. *Stephenson Estate*, 469 Pa. 128, 138, 364 A.2d 1301, 1306

2. Specifically, the exceptants sought to surcharge the accountant in the amount of $43,960.00 representing the additional income, computed at simple interest, that they calculated they would have received as income from the trust in the calendar years 1979 through 1984 if the principal had been invested in what they considered to be appropriate investments.

3. Patricia Hain and Barbara Alexander, remaindermen, desired that the trust continue to hold the shares of the Commonwealth Bank stock in accordance with the Settlors' intent as evidenced by the trust agreement. Richard Weibley and William A. Cope wanted the trust to diversify and to invest two-third's of the principal in legal investments and retain one-third of the principal in the bank stock. The recommendations by the auditor gave effect to these desires. On appeal, there is no issue raised as to the propriety of this recommendation which the court approved and we will not consider it.

(1976). The standard of care imposed upon a trustee is that which a man of ordinary prudence would practice in the care of his own estate.[4] *McCrea Estate*, 475 Pa. 383, 380 A.2d 773 (1977). One seeking to impose a surcharge has the burden of proving that the fiduciary failed to meet the duty of care owed to the estate. *Bard Estate*, 339 Pa. 433, 13 A.2d 711 (1940); *Dobson Estate*, 490 Pa. 476, 417 A.2d 138 (1980); *Ellis Estate*, 460 Pa. 281, 333 A.2d 728 (1975). Further, the exceptant must prove the particulars of the wrongful conduct. *Killey Estate*, 457 Pa. 474, 326 A.2d 372 (1974); *Linn Estate*, 435 Pa. 598, 258 A.2d 645 (1969); *Maurice Estate*, 433 Pa. 103, 249 A.2d 334, 336 (1969); *Brown Estate*, 343 Pa. 19, 21 A.2d 898 (1941). Where the trustee is authorized to retain certain stock, an exceptant to the trustee's account has the burden of proving that retention of the stock was negligent. *Mereto Estate*, 373 Pa. 466, 96 A.2d 115 (1953); *Glauser Estate*, 350 Pa. 192, 38 A.2d 64 (1944). See also *Jones Estate*, 344 Pa. 100, 23 A.2d 434 (1942).

The settlors directed the original trustee to retain all of the stock owned in the trustee bank and to distribute income in accordance with the terms of the trust. Had the trustee bank remained the same, it clearly would have violated the express terms of the trust agreement had it sold the stock and diversified the principal. The trust provided that the trustee should hold all of the stock of the Carlisle Deposit Bank and Trust Company and distribute the income to designated individuals during their lifetime. At the death of the last survivor of the class receiving income, the stock was then to be distributed in kind in

4. If a fiduciary has greater skill than that of a man of ordinary prudence, then the fiduciary's standard of care must be judged according to the standard of one having this special skill. *Stirling Estate*, 342 Pa. 497, 21 A.2d 72 (1941). *Lohm Estate*, 440 Pa. 268, 269 A.2d 451 (1970). Further, a trustee who obtains his appointment as trustee by representing that he has greater skill than a man of ordinary prudence will be held to have such skill that he represented he had. *Killey Estate*, 457 Pa. 474, 326 A.2d 372 (1974). Restatement (Second) of Trusts § 174. In the instant case, although the trustee was a bank, there was no evidence that it had special skill, nor that it represented that it did when the trust was established in 1932.

accordance with the exercise of a power of appointment set forth in the Deed of Trust. Consistent with modern banking tendencies, the Carlisle Deposit Bank and Trust Company did not remain a static institution and in 1962 it merged with the Harrisburg National Bank and Trust Company which thereafter became the Commonwealth National Bank. In due course, that bank became the Commonwealth National Financial Corporation. The auditor found, and the court below confirmed, that the stock in the successor banks was substantially equivalent to that in the Carlisle Deposit Bank and Trust Company and that the trustee properly retained the stock. *Macfarlane Estate*, 317 Pa. 377, 381–382, 177 A. 12, 14–15 (1935) stated:

> At the outset it may be noted that the shares of the new corporation might well be found to be so substantially equivalent to those of the old that the trustee's retention of them was within its testamentary authority to hold the shares left by the testator, and therefore entirely proper.
>
> . . . . .
>
> The new common shares maintained relatively as important a position and represented substantially the same interest in the enterprise as did the common shares of the former company, and would doubtless have been so considered by the testator. If a trustee holds shares of a corporation which he can properly retain, and the corporation is merged or reorganized into a new corporation, the trustee can properly receive and retain new shares issued in exchange for the old where they are substantially equivalent to the old shares and it is not imprudent for him to do so: *In re Smith*, [1902] 2 Ch. 667; *Anderson v. Bean*, 272 Mass. 432 [172 N.E. 647]; see Restatement, Trusts (Tentative Draft No. 4), section 223, comment f.
>
> . . . . .
>
> *However, we are not required to decide that question in the situation now before us.* The court below denied the claim of surcharge on the ground that appellant's conduct amounted to an affirmance of the acquisition and

retention of the shares. We think it was right in so holding. (Emphasis added.)

The auditor found that the stock in the successor corporation was the substantial equivalent of the original shares. However, as in *Macfarlane's Estate, supra,* we do not have to reach that issue.[5] The court determined that the income beneficiaries had acquiesced in the trustee's retention of the stock in the Harrisburg National Bank and its successors. If the evidence supports the findings of fact and the findings justify the decree, then the decree will not be set aside. *Mintz Trust,* 444 Pa. 189, 282 A.2d 295 (1971); *Walton Estate,* 348 Pa. 143, 34 A.2d 484 (1943). The Carlisle Deposit Bank and Trust Company merged with the Harrisburg National Bank and Trust Company in 1962 and the appellant was aware of this merger and subsequent mergers and consolidations. There were regular contact between the income beneficiaries and the officers in the bank's trust department. Richard Weibley testified to many communications about the trust with the bank. In addition, the income beneficiaries were aware that they could petition the court to modify the terms of the trust. They were advised of this by their own attorney as well as by the trustee and they knew of this option as early as 1979. It was only after the bank suspended dividends in 1983 that the income beneficiaries decided to compel the bank to file an accounting and to seek a surcharge for failure to diversify. The court below properly determined that the beneficiaries acquiesced to the nondiversification of principal and the retention of the stock. As noted in *Macfarlane Estate,* 317 Pa. at 382–383, 177 A. at 15:

A competent beneficiary who with full knowledge of the facts and of his rights expressly consents to or affirms an investment by the trustee cannot, in the ab-

---

5. The auditor gave careful consideration to the question of substantial equivalency between the original shares and the shares in the successor banks. There are highly technical factors in determining substantial equivalency of stock in successor corporations which we need not consider in this case. See *Bissell Trust,* 5 Pa.Fid.2d 27 (Allegheny County 1984); *Cope Estate,* 351 Pa. 514, 41 A.2d 617 (1945); *Buist Estate,* 297 Pa. 537, 147 A. 606 (1929).

sence of fraud, thereafter question its propriety: (Citing Cases). Affirmance of the investment may be implied from failure of the beneficiary to object within a reasonable time, although aware of the facts and continually receiving benefits from the investment: (Citing cases). Here there was more than enough evidence to indicate that the beneficiary had notice of the reorganization, of the acquisition of the new shares, and of the financial condition of the company from year to year, and that she had been unwilling to sell the shares in 1919. In such a situation it cannot be doubted that if she thought the Trustee's action was improper she was under a duty to speak.... Plainly, such conduct amounts to an affirmance sufficient to bar her claims of surcharge.

The Supreme Court stated in *Walton Estate*, 348 Pa. at 145, 34 A.2d at 485: "After a careful consideration of the record we conclude that there is sufficient evidence to warrant and justify the conclusion of the court below that appellant knew of the investment, and was sufficiently advised of all material facts, or of what he would have learned had he inquired, as to any subject in which he considered the information periodically given to him, as inadequate." This language is particularly applicable in the matter before us.

In 1979 Mr. Weibley discussed with Mr. Reitzel, who was Vice–President of the Commonwealth National Bank, and who had been in the trust department of the trustee bank since 1967, his concern that the income from the trust should be greater. After talking to Mr. Weibley and Mr. Cope, Mr. Reitzel sought an opinion from counsel concerning sale of the bank stock and he was advised that in the light of the trust agreement the trustee could not sell the stock without court approval.[6]

6. The letter from counsel to the trustee stated in part:

Pursuant to your request of March 5, 1979, I reviewed the above Trust Account which is pursuant to the Agreement of Trust dated July 29, 1932, between Joseph I. and Isabella W. Munro and the Carlisle Deposit Bank and Trust Company.

In 1979 the bank stock produced income of about 6% which the trustee felt was quite adequate. The income beneficiaries were fully aware of the non-diversification of trust principal, but did nothing about it until after 1983. In that year the bank stock did not pay a dividend. Subsequently, the trustee filed its First and Partial Account to which exceptions were filed. Mr. Weibley and Mr. Cope were fully aware that they could petition the court to direct diversification.

 The trustee did not diversify as it believed it was prohibited from doing so under the terms of the trust agreement. This decision was reasonable based on the terms of the agreement and opinion of its counsel. Mere failure to diversify is not a sufficient basis for the imposition of a surcharge as diversification of investments is not required in Pennsylvania. *Lentz Estate*, 364 Pa. 304, 72 A.2d 276 (1950). The decision whether to diversify must be made on a case by case basis. *Knipp Estate*, 489 Pa. 509, 414 A.2d 1007 (1980). In the circumstances of this case, considering the intentions expressed by the settlors in the deed of trust, and the acquiescence of the beneficiaries in the retention of the stock in the successor banks, we find that the exceptants have not met their burden of proof that the trustee did not exercise the required prudence in the performance of its fiduciary duties. We note that the trust principal has greatly increased since the inception of the trust and there is no complaint from the remaindermen,

The Trust document clearly differentiates between investments in the Carlisle Deposit Bank and Trust Company and other securities and investments. In so doing, it has limited the control over the Bank stock by providing that it only can be distributed by exercise of a power of appointment or the intestate laws of the Commonwealth of Pennsylvania as set forth in the paragraph beginning on the bottom of page 2 and continuing on page 3 of the Trust document. There is no provision for the liquidation or reinvestment of the Bank security.

In light of the above, it is my opinion that the Bank cannot liquidate the stock which it now owns as a result of being the successor to the Carlisle Deposit Bank and Trust Company. The only way it could be done would be upon application to the Court.

who will ultimately obtain principal, about the bank's performance as trustee.

Order affirmed.