

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-1-1999

# Carey v. Employers Mut. Cas. Co.

Precedential or Non-Precedential:

Docket 98-7118

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

## Recommended Citation

"Carey v. Employers Mut. Cas. Co." (1999). *1999 Decisions.* Paper 244.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/244

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed September 1, 1999

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 98-7118

ALAN CAREY; STEPHEN HOFFMAN; JACK LEIB, Appellants

v.

EMPLOYERS MUTUAL CASUALTY COMPANY

On Appeal from the United States District Court for the Middle District of Pennsylvania (D.C. No. 97-cv-00349) District Judge: Hon. Sylvia H. Rambo

Argued December 15, 1998

Before: SLOVITER, COWEN and OBERDORFER,* Circuit Judges

(Filed: September 1, 1999)

Mark W. Voigt (Argued) Michael I. Levin & Associates Huntingdon Valley, PA 19006

Counsel for Appellants

_____

*Hon. Louis F. Oberdorfer, United States Circuit Judge for the District of Columbia, sitting by designation.

Timothy Costello (Argued) Marshall, Dennehey, Warner, Coleman & Goggin Philadelphia, PA 19103

Counsel for Appellee

OPINION OF THE COURT

SLOVITER, Circuit Judge:

Plaintiffs Alan Carey, Stephen Hoffman, and Jack Leib (the "Supervisors"), who filed this action for a declaratory judgment against Employers Mutual Casualty Co. ("Employers Mutual"), appeal the decision of the District Court denying their motion for summary judgment and granting summary judgment in favor of Employers Mutual. Employers Mutual had issued an errors and omissions insurance policy in favor of Berwick Township, Pa. (the "Township"). Plaintiffs filed this action seeking a determination that Employers Mutual is obligated to defend and indemnify them from a surcharge filed against them by the Audit Committee of the Township.

I.

The parties stipulated to the material facts. Carey, Hoffman, and Leib were supervisors for the Township during 1993. In May of that year, the Township entered into a contract with Berwick Enterprises, which was constructing a golf course and contiguous residential tracts. The Township agreed to design and construct a sewage treatment system and a storage lagoon that would connect to the golf course's irrigation system. Additionally, the Township agreed to pay certain construction costs associated with the irrigation system. The contract specified that the Township agreed to pay $240,000, but if the construction cost less than that amount, the Township would receive the benefit. Berwick Enterprises constructed the irrigation system and billed the Township the $240,000 referenced in the contract. After the system was installed, the Township's engineer, Group Hanover, Inc., analyzed the project and concluded that the excavation cost for the irrigation system was only $84,466. However, the report cautioned that the analysis did not take into account a variety of other relevant expenses. As a result of the engineer's estimate, the Supervisors negotiated a compromise and settlement under which Berwick Enterprises received $216,000. The Township paid $65,000 in cash and the remainder by a promissory note for $151,000, with interest at six percent. Appellant Leib signed the promissory note on behalf of the Township on January 24, 1994.

In March 1996, the Township's Audit Committee concluded that the Supervisors had negligently overpaid Berwick Enterprises $140,216.50, representing the excess of principal and interest beyond the engineer's estimate of the cost ($84,466), and entered a notice of surcharge of $140,216.50, the difference between the cost to the Township of $224,682.50 (the settlement figure of $216,000 and interest of $8,682.50 on the note) and the engineer's estimate. The reasons set forth by the Audit Committee for imposition of the surcharge were that the Committee had not been provided with any detailed invoice or other documentation contradicting Group Hanover's valuation of the project, and that the Township should have followed a public bidding process for the project.

Pursuant to the applicable procedure, the Supervisors filed a notice of appeal from the Audit Committee's Report in the Court of Common Pleas of Adams County seeking relief from the Audit Report and notice of surcharge. They claimed, inter alia, that they had acted reasonably and in good faith in compromising the

disputed claim and that the Audit Committee had not correctly accounted for all the relevant costs incurred by the contractor in connection with the irrigation project. That litigation was stayed pending resolution of this case.

The Supervisors sought coverage from Employers Mutual under the errors and omissions (E&O) insurance policy purchased by the Township, which was effective June 1995 to June 1996 and which covered claims made for alleged wrongful acts after June 4, 1987. Employers Mutual denied coverage on three separate grounds: the policy specifically excluded from covered losses any "[f]ines or penalties imposed by law," see App. at 120; the policy excluded " `[w]rongful' acts involving . . .[a]mounts actually or allegedly due under the terms of a payment or performance contract," see App. at 121; and the policy excluded "[a]ny claim brought by any federal, state or local governmental regulatory body," see App. at 122. The insurer also contended that its defense and indemnification of the Supervisors would violate public policy.

The Supervisors filed a declaratory judgment action in the Court of Common Pleas of Adams County in February 1997 alleging that they were entitled to defense and indemnification under the insurance policy. Employers Mutual, an Iowa corporation, removed the case to federal court and answered, citing the three exclusions from coverage referred to above. Both parties moved for summary judgment. On January 28, 1998, the District Court granted Employers Mutual's motion, concluding that the surcharge action was a fine or penalty under the policy terms; the court consequently declined to reach the other policy exclusions relied on by Employers Mutual.

The supervisors filed a timely notice of appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291. Our review is plenary. See Nationwide Mut. Fire Ins. Co. v. Pipher, 140 F.3d 222, 224 (3d Cir. 1998). The parties agree that Pennsylvania law applies.

II.

An errors and omissions insurance policy is a form of professional liability insurance designed to insure certain classes of professionals from risks such as negligence. See Lee R. Russ, Couch on Insurance § 131:38, at 131-49 to -50 (3d ed. 1997). In essence, an E&O policy is a form of malpractice insurance. National Ass'n of Realtors v. National Real Estate Ass'n, Inc., 894 F.2d 937, 938 (7th Cir. 1990);

Syndicate 420 at Lloyd's London v. Early Am. Ins. Co., 796 F.2d 821, 824 n.2 (5th Cir. 1986).

Other types of policies, such as those issued for corporate directors and officers, which often contain E&O provisions, commonly exclude coverage for fines and penalties. See 3 Rowland H. Long, The Law of Liability Insurance § 12A.05[7][a][iii], at 12A-95 (1989).

The Supervisors urge that the policy language "[f]ine or penalty imposed by law" is ambiguous and must be construed against Employers Mutual as the drafter of the policy. See Commonwealth of Pennsylvania, Dep't of Transp. v. Semanderes, 109 Pa. Commw. 505, 511, 531 A.2d 815, 818 (Commw. Ct. 1987) ("When a contract is ambiguous, it is undisputed that the rule of contra proferentem requires the language to be construed against the drafter . .. and in favor of the other party if the latter's interpretation is reasonable.") The District Court concluded that the issue is not whether the policy itself is ambiguous, but rather whether the surcharge is a fine or penalty and thereby excluded from coverage.

There are not many cases dealing with the scope of a fines and penalties clause in an insurance contract. Counsel for Employers Mutual stated that he had found none. Our research has uncovered only a few, and those are not direct analogs. The decisions often turn on the precise language of the policy.

For example, in Page Wellcome, Professional Service Corp. v. Home Insurance Co., 758 F. Supp. 1375 (D. Mont. 1991), aff'd, 993 F.2d 887 (9th Cir. 1993), Wellcome, an attorney who was sanctioned by a state trial court for giving a closing argument that violated the court's in limine ruling, sought and was denied coverage by his professional liability insurer on the ground that the sanction was a "fine or penalty," which the policy expressly excluded from the definition of covered "damages." The federal district court agreed with the insurer, holding that the policy was clear and unambiguous in its prohibition of fines, which the court defined as "the payment of money imposed upon a person for misconduct." Id. at 1379-80. The court ruled that because the sanction was imposed for misconduct, it constituted a fine and the insurer had no duty to indemnify or defend. Id. at 1380-81.

On appeal, the Ninth Circuit certified the question to the Montana Supreme Court. See Wellcome v. Home Ins. Co., 849 P.2d 190, 191 (Mont. 1993). The Montana Supreme Court rejected Wellcome's argument that the term"fine" is limited to criminal statutes and that sanctions are neither fines, penalties, nor any other

type of punishment. The Court referred to Black's Law Dictionary in holding that a fine is a pecuniary punishment, and that this meaning is clear and well understood. Wellcome, 849 P.2d at 193. It thus concluded that the policy excluded coverage for Wellcome because the sanction imposed on him was a punitive fine or penalty. Id. at 194; see also Dixon v. Home Indem. Co., 426 S.E.2d 381, 382–83 (Ga. Ct. App. 1993) (holding that term "sanctions" in exclusion for fines, statutory penalties, and sanctions prevents coverage for award of attorneys fees imposed to deter filing of frivolous lawsuit).

The issue of the scope of a policy exclusion of coverage for fines or penalties also may arise when coverage is sought for the payment of punitive damages.1 See Long, supra, § 12B.05[1], at 12B–92. For example, in Collins & Aikman Corp. v. Hartford Accident & Indemnity Co., 436 S.E.2d 243 (N.C. 1993), a trucking company, which maintained an umbrella/excess liability policy for damages arising from its operations, was held liable for $2.5 million in compensatory and $4 million in punitive damages following a serious accident. The parties settled for $4.2 million. The insurer refused to cover the punitive damages, on the ground that the policy stated that " `damages' do not include fines or penalties." Id. at 246. The court rejected this argument, holding that the term "penalty" in the policy exclusion was at least ambiguous and, therefore, it must be interpreted against the insurer who wrote the policy. The court thought "[i]t takes some construing of the word `penalty' to hold that it includes punitive damages," and declined to so hold. Id. at 247.

Finally, some cases address the scope of a fines or

_____

1. Generally, courts are divided on the public policy question whether an insurer may indemnify punitive damages. See Long, supra, § 12A.05[7][a][iii], at 12A–96 to –97; see also Barry R. Ostrager & Thomas R. Newman, Handbook on Insurance Coverage Disputes ch. 14 (9th ed. 1998). penalties exclusion as it applies to coverage for various administratively imposed sanctions. In that situation, the courts usually have looked to the nature of the sanction in determining whether the policy excludes coverage. For example, in St. Paul Fire & Marine Ins. Co. v. Briggs, 464 N.W.2d 535 (Minn. Ct. App. 1991), the Internal Revenue Service (IRS) sought to recover the employer's unpaid withholding taxes from two officers personally. The relevant Internal Revenue Code ("IRC") provision made the individuals liable for a "penalty equal to the total

amount of the tax evaded, or not collected, or not accounted for and paid over." Id. at 537 (quoting 26 U.S.C.§ 6672 (1989)).

The insurer had issued a directors' and officers' liability policy covering negligence, errors, omissions, and breaches of duty, but excluding fines and penalties or other losses deemed uninsurable by law. The insurer argued that the tax assessments were excluded penalties. The Minnesota court disagreed, holding that the § 6672 liability was not a penalty within the language of the policy exclusion. In so holding, it relied on several federal court decisions that ruled that, despite the "penalty" language of the Code provision, the assessment was not penal in nature, i.e., the penalty was not punitive. Nonetheless, the court in Briggs concluded that "insurance coverage for nonpayment of taxes would be contrary to public policy," id. at 539, and held the insurer had no duty to defend or indemnify.

An Iowa court looked differently at excise taxes under IRC § 4975(a) that the IRS imposed on the insureds for their improper dealings with an ERISA pension plan. See Hofco, Inc. v. National Union Fire Ins. Co., 482 N.W.2d 397 (Iowa 1992). The insurance policy covered loss because of any breach of fiduciary duty, but excluded fines and penalties from the term "loss." The court concluded that the policy did not cover the five-percent excise tax imposed by the IRS. The court held that "penalty," though undefined, was not ambiguous, relying on Black's Law Dictionary for the meaning of penalty as money that the law exacts as punishment for either doing a prohibited act or not doing a required act. Reviewing the cases and legislative history of the excise tax at issue, the court concluded that"the excise tax statute was passed to shift the sanction for a violation of the prohibited transaction provision from the trust or plan to the parties." Id. at 402. It reasoned that the purpose of the excise tax was (1) to prohibit certain conduct, not to raise revenue; (2) to impose the tax on the specific individuals involved in the prohibited transaction; and (3) to curb the prohibited conduct through pecuniary punishment. Id. at 403. Therefore, it held that the tax was a penalty rather than a tax, and the policy provided no coverage.

In summary, the available case law suggests that an exclusion for fines and penalties, where those terms are undefined in the policy, allows an insurer to deny coverage when the item to be covered is punitive, rather than merely compensatory. Supporting this conclusion is the fact that "a significant number of states" prohibit insurance for fines and penalties that are penal, rather than remedial or compensatory, in nature. See

Ostrager & Newman, supra, § 10.03[d], at 551. Moreover, there are cases holding that punitive fines and penalties are not insurable as "damages." See, e.g., City of Fort Pierre v. United Fire & Cas. Co., 463 N.W.2d 845, 849 (S.D. 1990) (holding that civil penalties for Clean Water Act violation were punitive and uninsurable as a matter of public policy). But see Weeks v. St. Paul Fire & Marine Ins. Co., 673 A.2d 772 (N.H. 1996) (observing that, where insurer has failed to expressly exclude fines and penalties, court would not relieve insurer of obligation to pay compensatory surcharge that was arguably punitive in nature).

With this background, we turn to consider whether the surcharge noticed by the Township is punitive in nature and hence a fine or penalty excluded from coverage by Employers Mutual's policy.

III.

We focus on the nature of the surcharge provision. Because there are no Pennsylvania Supreme Court cases on point, we are left to predict whether that court would interpret the surcharge at issue as a punitive fine or penalty. See Borman v. Raymark Indus., Inc., 960 F.2d 327, 331 (3d Cir. 1992). Pennsylvania law directs township auditors to:

surcharge any elected or appointed officer for the amount of any loss to the township caused in whole or in part by the officer's act or omission in violation of law or beyond the scope of the officer's authority. If the auditors find an absence of intent to violate the law or exceed the scope of authority. . . the surcharge imposed shall be limited to the difference between the costs actually incurred by the township and the costs that would have been incurred had legal means and authorized procedures been employed. Provisions of this section which limit the amount of surcharge do not apply to cases involving fraud or collusion on the part of the officers or to any penalty issuing to the benefit of or payable to the Commonwealth.

53 Pa. Stat. Ann. § 65907(a) (emphasis added).

The only reported Pennsylvania case to address the nature of a surcharge is In re Appeal from Report of Audit of South Union Township for 1975, 47 Pa. Cmwlth. 1, 407 A.2d 906 (Commw. Ct. 1979). There, the Board of Auditors appealed the dismissal by the Court of Common Pleas of Fayette County of the surcharges filed against two township supervisors covering, inter alia, amounts paid to the supervisors as

compensation for use of their automobiles, amounts paid to township employees to be used for hospitalization insurance premiums, and back wages paid to employees pursuant to an arbitration. The Commonwealth Court sustained the trial court's dismissal of the surcharges, primarily because the supervisors had not abused their discretion in making the payments. Significantly, in at least two instances, the appellate court sustained the dismissal of the surcharges because it had not been shown that the township sustained a financial loss, thereby signifying that the purpose of the surcharge is to compensate for loss suffered. Id. at 3-5, 7, 407 A.2d at 908-10. That compensatory purpose is further reflected in the reason the court gave in holding the trial court erred in refusing to call one supervisor to testify on the ground that it would violate his right against self-incrimination. The Commonwealth Court, although finding the error harmless, held that the proceeding was civil, not quasi-criminal, and observed that "the function of the surcharge is remedial and not punitive, i.e., it is designed to reimburse the government for losses resulting from some misconduct of its officials." Id. at 8, 407 A.2d at 910.

In the case before us on appeal, the District Court, focusing on the question whether the Audit Committee's surcharge constituted a penalty, analogized this surcharge to the one imposed in trusts and estates law forfiduciaries who are negligent in their duties. In support of this analogy, the District Court observed that, under Pennsylvania law, a public official acts as afiduciary in holding public funds. See Columbia Cas. Co. v. Westmoreland County, 365 Pa. 271, 274, 74 A.2d 86, 88 (1950).

In the trusts and estates context, the Pennsylvania Supreme Court has held,

Surcharge is the penalty for failure to exercise common prudence, common skill and common caution in the performance of the fiduciary's duty and is imposed to compensate beneficiaries for loss caused by the fiduciary's want of due care.

In re Miller's Estate, 345 Pa. 91, 93, 26 A.2d 320, 321 (1942) (emphasis added); accord In re Trust of Munro v. Commonwealth Nat'l Bank, 373 Pa. Super. 448, 452, 541 A.2d 756, 758 (Super. Ct. 1988). By the plain terms of this definition, the Pennsylvania courts construe thefiduciary's surcharge to be compensatory, even though it is also considered a penalty. Based in part on this analogy, in conjunction with the precedent describing the surcharge as remedial rather than punitive, and the statute that authorizes

surcharges "for the amount of any loss to the township caused by the officer's act," we conclude that the surcharge is not punitive but remedial.

Of course, Employers Mutual could have expressly excluded surcharges from coverage under its E&O policy, but it failed to do so. Therefore, the Supervisors argue, the policy is at best ambiguous as to the exclusion of the surcharge.

"A provision of a contract of insurance is ambiguous if reasonably intelligent persons, considering it in the context of the whole policy, would differ regarding its meaning." State Farm Mut. Auto. Ins. Co. v. Moore, 375 Pa. Super. 470, 475-76, 544 A.2d 1017, 1019 (Super. Ct. 1988) (quoting Musisko v. Equitable Life Assurance Soc., 344 Pa. Super. 101, 106, 496 A.2d 28, 31 (Super. Ct. 1985)). Looking at this policy as a whole, we agree that the policy drafted by Employers Mutual is ambiguous regarding coverage for this surcharge because it is susceptible to more than one interpretation regarding what it covers.

Significantly, the policy does not define the terms "fine" or "penalty" anywhere. As the precedents discussed earlier demonstrate, a fines or penalties exclusion may be raised in a wide variety of situations not all of which are clearly excluded under this language.

Pennsylvania law, like that of many states, provides:

[W]here the language of a policy prepared by an insurer is either ambiguous, obscure, uncertain or susceptible to more than one construction, courts will construe the language most strongly against the insurer and accept the construction most favorable to the insured.

D'Allessandro v. Durham Life Ins. Co., 503 Pa. 33, 37, 467 A.2d 1303, 1305 (1983) (citing Ehrlich v. U.S. Fidelity & Guar. Co., 356 Pa. 417, 423, 51 A.2d 794, 797 (1947)). Consequently, we hold that the fines and penalties exclusion in the E&O policy here does not unambiguously exclude the surcharge imposed by the Audit Committee, and the District Court erred in granting summary judgment for Employers Mutual.

In reaching this conclusion, we do not hold that Employers Mutual must defend or indemnify the Supervisors. The insurance company raised two other exclusions that the District Court did not address. On remand, the District Court may consider those alternative exclusions.

IV.

For the reasons set forth, we will reverse and remand to the District
Court for further proceedings consistent
with this opinion. A True Copy: Teste:

Clerk of the United States Court of Appeals for the Third Circuit 12

FOOTNOTES