SCOTTSDALE INSURANCE
CO. Plaintiff

v.

BIEBER & ASSOCIATES, INC., Ralph Sparaney, III, Metropolitan Entertainment, Inc., County of Lackawanna, Montage Ski Resort, Defendants

No. CIV.A.3:00–1916.

United States District Court,
M.D. Pennsylvania.

May 13, 2003.

Richard Yost, Yost & Tretta, Philadelphia, PA, for the plaintiff.

Irwin Schneider, Irwin Schneider & Associates, P.C., Clarks Summit, Jeffrey M. Kornblau, Kornblau & Kornblau, Jenkintown, Mitchell S. Berger, Ryan, Brown, McDonnell, Berger & Gibbons, P.C., Philadelphia, PA, for the defendants.

### MEMORANDUM AND ORDER

MANNION, United States Magistrate Judge.

Before the court is the plaintiff Scottsdale Insurance Co.'s ("Scottsdale") motion for summary judgment, together with a memorandum of law in support. (Doc. Nos. 36 & 37). Also before the court is the defendant Ralph Sparaney's brief in response to the motion for summary judgment, as well as his cross-motion for summary judgment and supporting brief. (Doc. Nos. 41 & 42).

By way of background, this action was commenced by a declaratory judgment complaint filed on October 30, 2000. (Doc. No. 1). An answer and affirmative defenses were filed by the defendant Bieber & Associates on December 14, 2000. (Doc. No. 11). An answer was also filed by the defendant Sparaney on December 18, 2000. (Doc. No. 10). Following a joint case management conference held on April 24, 2001, various case management deadlines were set in accordance with those proposed by the parties. In addition, the defendant Bieber & Associates advised the other parties that it intended to file a motion to stay these federal court proceedings pending a resolution by the Pennsylvania Commonwealth court of an appeal on the underlying default judgment issue previously decided in the Lackawanna County Court of Common Pleas. (Doc. Nos. 21 & 22). On May 31, 2001, Bieber & Associates filed a motion and brief in support of their request to stay these proceedings. (Doc. Nos. 25 & 26). The motion to stay was granted on June 14, 2001. (Doc. No. 28).

Following notification from the plaintiff that the Commonwealth court had affirmed the decision of the Lackawanna County Court of Common Pleas, the stay of these proceedings was lifted in an order dated November 16, 2001. (Doc. No. 30). Because the stay had significantly disrupted the case management dates, the court and the parties held a status conference on November 29, 2001 and established new case management dates that would control. Those dates were set forth in an order of November 30, 2001. (Doc. No. 32). Following a teleconference among all counsel on July 11, 2002, the trial was continued generally because of the parties' request for additional time to file motions for summary judgment. (Doc. No. 35). It appears that Scottsdale Insurance Co., included an affidavit of a Mr. Udayan De, who had not previously been identified to the defendants. As such, the defendants objected to the affidavit and requested time to depose Mr. De in order to adequately address the affidavit attached to the plaintiff's motion for summary judgment. The court granted the request in an order dated July 31, 2002. (Doc. No. 38). An additional discovery dispute conference was held on September 10, 2002 in which additional disputed matters were resolved. (Doc. No. 39). The only outstanding matter remaining before the court now are the above-mentioned cross-motions for summary judgment.

## I. *Background*

This action arises out of an incident that occurred on August 27, 1995 when Ralph Sparaney was attending a concert at the Montage Ski Area. (Doc. No. 1, Exh. A, ¶ 7). While attempting to purchase a beverage at the concession stand, it appears that he was stabbed in the back with a knife, sustaining serious injuries. (*Id.* at ¶ 10). The court further adopts the facts as set forth by the Commonwealth Court of Pennsylvania, in their decision on the underlying matter:

> On August 22, 1997, Ralph Sparaney, III, (plaintiff) filed a writ of summons which was served on the following named defendants: County of Lackawanna ("County"); Metropolitan Entertainment, Inc. ("Metropolitan"); Bieber and Montage Ski Resort ("Montage"). Subsequently, the plaintiff filed a complaint alleging that an unknown assailant stabbed him while he attended a concert at Montage on August 27, 1995. The complaint further alleged that plaintiff suffered injury due to the inadequate security furnished by the property owners, Montage and County, the concert promoter, Metropolitan, and the security agency hired for the event, Bieber.

> All defendants except Bieber filed timely answers to the complaint. On August 20, 1998, plaintiff served Bieber a notice of intent to take default judgment. After Bieber failed to respond, plaintiff filed a praecipe to enter default judgment on October 13, 1998, and default judgment was entered against Bieber that day.

> Thereafter, Bieber filed a petition to open default judgment alleging that it did not receive proper service of plaintiff's intent to take default judgment. Additionally, Bieber asserted that it forwarded all documents pertaining to the underlying civil suit to its insurance carrier, Scottsdale Insurance Co. ("Scottsdale") and assumed that Scottsdale would handle the matter. The parties proceeded to discovery regarding the issues raised in Bieber's petition.

> On May 26, 2000, the trial court denied the petition and Bieber then appealed to (the Commonwealth Court of Pennsylvania) arguing that the trial court erred as a matter of law and abused its discretion by denying Bieber's petition to open default judgment. As (the Commonwealth Court of Pennsylvania) agrees with the trial court's well reasoned decision denying Bieber's petition to open default judgment...(It) affirm(ed) the trial court's order...

(Doc. No. 29).

Following Bieber & Associates unsuccessful attempt to open the default judgment in the Pennsylvania State Court's, its insurance company, Scottsdale brought this declaratory judgment action seeking "an order declaring that Scottsdale has no obligation to defend or indemnify Bieber & Associates, Inc. for any claims asserted in the Sparaney action." (Doc. No. 1, p. 7). Scottsdale brings this action because they claim that Bieber & Associates violated the provisions of the policy issued to Bieber by not providing Scottsdale notice of the Sparaney action until several months after default judgment was entered against Bieber. (Id., p. 6, ¶ 21). Additionally "in failing to provide timely notice of the Sparaney action", Bieber failed to comply with its obligation under the "duties in the event of a current claim or suit" clause of the Scottsdale policy. (Id. at ¶ 25).

As noted in the complaint filed by Scottsdale, Metropolitan, "Lackawanna, and Montage are named as defendants because they have asserted claims against Bieber in the Sparaney action and are, therefore, parties that are potentially interested in the outcome of this action." (Id. at p. 7, ¶ 30).[1]

---

**1.** The defendants Metropolitan, County of Lackawanna and Montage had not filed an-

In support of their motion for summary judgment, Scottsdale relies upon Section IV of the Scottsdale Policy titled "Commercial General Liability Conditions". It further relies upon Section IV–2 "Duties in the Event of Occurrence, Claim or Suit, which in pertinent part states:

(b). If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable. You must see to it that we received written notice of the claim or "suit" as soon as practicable.

(c). You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summons or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation, settlement or defense of the claim or "suit";

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply."

(Doc. No. 37, pp. 2–3);(Doc. No.37, Exh. C).

Scottsdale argues that Sparaney initiated the action on August 22, 1997 by filing the writ of summons as noted above. The writ was served upon Bieber on or about September 4, 1997. Ultimately, a

complaint was served upon Bieber on or about April 20, 1998. (*Id.* at p. 3). Because of Bieber's failure to respond to the complaint, default judgment was entered against it on October 13, 1998 by the Court of Common Pleas of Lackawanna County. According to Scottsdale, "Bieber did not provide Scottsdale notice of the Sparaney action until several months after default judgment was entered against Bieber." (Id. at 3–4). Interestingly, however, Scottsdale states the following in its brief:

It is undisputed that Bieber had been on notice of a potential claim since early 1996. Metropolitan Entertainment's insurer, CNA, notified Scottsdale of the claim in July 1996. Scottsdale retained Jordan & Co. to conduct a limited investigation of Ralph Sparaney's claim. Jordan's assignment was limited to interviewing George Bieber and attending a concert to observe Bieber & Associates security procedures (Affidavit of Donald Jordan, attached hereto as Exhibit "D"). It is undisputed that Scottsdale and CNA attempted to settle the claim in July 1997, and that Sparaney rejected the offer. (Id. at p. 4, fn. 1).

As a result of the foregoing, Scottsdale argues that it has no obligation to provide coverage because Bieber "failed to provide timely notice of the lawsuit and cooperate in its defense." (*Id.* at p. 7).

Sparaney, on the other hand, argues that Scottsdale brought this declaratory judgment action,

"... four years and three months after Scottsdale's admitted receipt of notice of claim being made by Ralph Sparaney, III, against its insured, four years after

---

swers in this declaratory judgment action. According to counsel for those defendants, this was as a result of a discussion between the district court judge then assigned the case and the parties at the initial case management conference on April 4, 2001. In order, how-

ever, to make the record clear, the undersigned requested that the above-mentioned defendants file an answer to the complaint. Their answer was filed on April 11, 2003. (Doc. No. 43).

it performed substantial investigation of the circumstances surrounding the underlying claim, two years after default judgment was entered against its insured and one and a half years after legal counsel hired by Scottsdale entered an appearance with the purpose of representing and defending its insured in the underlying action."

(Doc. No. 42, pp. 1–2).

Sparaney goes on to argue that:

A. "Scottsdale ... has failed to meet its burden that it did not have proper notice under the policy" since Scottsdale actively investigated the underlying claim, and defended the legal action;

B. ...It "has waived its right to seek the benefit of the policy's notice provisions;" and,

C. ... "Under the express language of the insurance policy, the notice provision was met and Scottsdale is properly required to defend and indemnify Bieber & Associates, Inc."

(Doc. No. 42, pp. 6, 7 & 9).

As such Sparaney requests the court deny Scottsdale's motion for summary judgment and grant his own cross-motion for summary judgment, or in the alternative, find that there are genuine issues of material fact precluding the granting of summary judgment to Scottsdale and requiring a trial.

## II. *Summary Judgment Standard*

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c).

The Supreme Court has stated that:

"... [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* The moving party can discharge that burden by "showing ... that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548.

Issues of fact are genuine "only if a reasonably jury, considering the evidence presented, could find for the nonmoving party." *Childers v. Joseph,* 842 F.2d 689, 693–94 (3d Cir.1988) (citations omitted). Material facts are those which will effect the outcome of the trial under governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court may not weigh the evidence or make credibility determinations. *Boyle v. County of Allegheny,* 139 F.3d 386, 393 (3d Cir.1998). In determining whether an issue of material fact exists, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the nonmoving party. *Id.* at 393.

If the moving party meets his initial burden, the opposing party must do more than raise some metaphysical doubt as to material facts, but must show sufficient evidence to support a jury verdict in its favor. *Id.*

### III. *Discussion*

 Scottsdale asserts that the burden of proof in this declaratory judgment action rests with the insured, rather than the insurer. It relies upon *Fireman's Fund Insurance Co. v. Videfreeze Corp.,* 540 F.2d 1171 (3d Cir.) *cert. denied.,* 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1977) for the proposition that it is Bieber's burden to prove that it complied with the notice requirements of the Scottsdale policy. As noted in *Fireman's Fund,* the burden of proof in a declaratory judgment action is substantive and not procedural, as such is governed by state law.

In *Fireman's Fund,* however, the issue before the court was a substantive dispute as to coverage, and not merely a procedural dispute as to the policy's interpretation, namely, Videfreeze's claim that its property had been damages as a result of falling rocks created by an earthquake. The insurance company, on the other hand, argued that there was no such earthquake. Therefore the factual issue of whether or not an earthquake had taken place was dispositive of whether or not coverage would be allotted, since there was an "earthquake insurance assumption endorsement" in the policy. If the damage was caused by earthquake there would be coverage and if it wasn't there would not be coverage.

While the declaratory judgment action requesting a declaration of non-coverage was brought by Fireman's Fund, the real issue was whether or not there was an earthquake upon which liability could be premised. Therefore, the court ruled that the burden of proof in that declaratory judgment action properly rested with the nominal defendant, Videfreeze, as they were the party asserting "the affirmative of the issue" by requesting coverage under the terms of the policy. *Id.,* at 1175.

In the case before this court, Scottsdale has never argued that their policy would not cover the alleged negligence of Bieber's & Associates that led to the injury that occurred to Mr. Sparaney when he was stabbed at the concert at Montage Mountain. Rather, Scottsdale is asserting the affirmative of the issue by relying on a policy exclusion as its basis to deny coverage.

 Normally, the insurer bears the burden of proving that a specific exclusion applies. *Mistick, Inc. v. Northwestern National Casualty Co.,* 806 A.2d 39 (Pa.Super.2002). In this case, the plaintiff Scottsdale asserts that the information and notification it received from Jordan & Company (its investigators), Kornblau & Kornblau (the attorneys for Mr. Sparaney) and CNA Insurance Co. (the insurer for a co-defendant) was insufficient to satisfy the provisions of the Scottsdale's policy concerning "duties in the event of occurrence, claim or suit." Under the circumstances of the present case, this court construes the plaintiff's declaratory judgment action as attempting to enforce a policy exclusion.

In a very recent decision, the Third Circuit has held that the burden of proof rests with the insurance company when it "...seeks to be relieved of its obligations under a liability insurance policy on the ground of late notice, the insurance company will be required to prove that the notice provision was in fact breached and that the breach resulted in prejudice to its position." *Brooks v. American Centennial Insurance Co.,* 327 F.3d 260, 264 (3d Cir.2003)(citing *Brakeman,* 371 A.2d at 198). The court therefore holds that the

burden of proof in this declaratory judgment action is upon Scottsdale Insurance Co.[2]

The real issue before the court boils down to whether or not Scottsdale was reasonably notified of an "occurrence, claim or suit." It is settled law that policy exclusions are strictly construed against the insurer. *Selko v. Home Insurance Co.*, 139 F.3d 146, 152 n. 3 (3d Cir.1998).

The purpose of a policy provision requiring notice of an accident or loss to be given within a certain time is to give the insurer an opportunity to acquire, through an adequate investigation, full information about the circumstances of the case, on the basis of which, it can proceed to disposition, either through settlement or defense of the claim...Thus, a reasonable notice clause is designed to protect the insurance company from being placed in a substantially less favorable position than it would have been if timely notice had been provided. *e.g.*, being forced to pay a claim against which it has not had an opportunity to defend effectively ... Where the insurance company's interests have not been harmed by a late notice ...the reason behind the notice condition in the policy is lacking, and it follows neither logic nor fairness to relieve the insurance company of its obligations under the policy in such a situation. *Trustees of the University of Pennsylvania v. Lexington Insurance Co.* 815 F.2d 890, 897–898 (1987)(citing *Brakeman v. Potomac Insurance Co.*, 472 Pa. 66, 371 A.2d 193 (1977))

The recent *Brooks'* decision is instructive in many ways relative to the instant action. In *Brooks'*, the plaintiff was injured in an industrial accident when an 850 pound pump slid off a handcart and fell onto him. The trucking company, for which Brooks worked, had multiple levels of insurance coverage up to $5 million dollars. By the time the case went to trial in 1993, the original defendant employer had gone bankrupt. As such, pursuant to Pennsylvania's direct action statute[3], Brooks stood in the shoes of the bankrupt insured for purposes of seeking recovery against the insurance company.

The defendant American Centennial Insurance Company (ACI) was the excess carrier with coverage from $1 to $5 million dollars. ACI argued that they were never notified concerning the action until almost three (3) years after the trial was concluded. At that time, Brooks' counsel advised ACI that a $6 million dollar verdict had been entered and that ACI would be responsible for $4 million dollars of that judgment. ACI countered that it was "relieved of any obligation to indemnify its insured for a claim where the insured failed to provide timely notice of its claim and the insurer suffers prejudice as a result." *Brooks*, supra, at 262–63. More specifically, ACI argued that it was prejudiced because "it was unable to: (1) investigate the claim prior to trial; (2) interview witnesses or retain counsel; (3) present several defenses to its liability, including contributory or comparative negligence, assumption of risk and contribution or indemnification by a third party tortfeasor..; (4) obtain an independent medical examination of Brooks; (5) present any defense as to damages; (6) engage in discovery concerning Brooks' alleged inju-

**2.** The court notes however, that even if the burden of proof had been upon the defendants, that the undisputed facts presented in the cross-motions for summary judgment overwhelmingly and inextricably lead the court to the conclusion that Scottsdale had timely notice of at least the "occurrence (and) claim" which compels a finding for the defendants, even if they were accorded the burden of proof.

**3.** Pa. Stat. Ann. Tit. 40, § 117, West 1993.

ries and present its own medical experts at trial; (7) retain a vocational expert and present other available evidence that Brooks was capable of holding a job; (8) engage in settlement negotiations; and, (9) appeal the $6 million dollar, unchallenged verdict". (*Id.* at 264–65).

Although the district court found in favor of the ACI and granted summary judgment, the Third Circuit reversed. The testimony of a claims department employee stated that ACI had first received notice of the claim in July of 1996 (3 years after the trial). The Circuit noted, however, that ACI "may have received notice of Brook's claim through TUI, its underwriter ... (as) the record suggests that North Star (a lower level insurer) and Darrah (the company that assembled the insurance package) spoke frequently with TUI regarding ... (the) claim. It is entirely possible that TUI learned of Brook's claim over the course of that communication." (*Id.* at 267–68). In the instant case, it is undisputed that multiple communications took place among Scottsdale, its investigators, co-defendant insurers and counsel for Sparaney, about the claim.

 Importantly, the notice provisions in the policy before this court, are written in the disjunctive. Specifically, Section IV is titled "Commercial General Liability Condition." In subdivision 2(b), the heading reads "Duties in the Event of Occurrence, Claim *or* Suit." (Emphasis added). " 'A provision of a contract of insurance is ambiguous if reasonably intelligent persons, considering it in the context of the whole policy, would differ regarding its meaning.' " *Carey v. Employers Mut. Cas. Co.*, 189 F.3d 414, 420 (3d Cir.1999)(quoting *State Farm Mut. Auto. Ins. Co. v. Moore*, 375 Pa.Super. 470, 544 A.2d 1017, 1019 (1988)(further citation omitted)). " 'Ambiguous provisions in an insurance policy must be construed against the insurer and in favor of

the insured; any reasonable interpretation offered by the insured, therefore, must control.' " *The Med. Protective Co. v. Watkins*, 198 F.3d 100, 104 (3d Cir. 1999) (citation and internal quotation marks omitted).

 However, "[I]f the language of an insurance policy is clear and unambiguous, its ordinary meaning is to be given effect." *Imperial Cas. & Indemnity Co. v. High Concrete Structures, Inc.*, 858 F.2d 128, 131 (3d Cir.1988). The court "should interpret the policy so as to avoid ambiguities and give effect to all of its provisions." *The Med. Protective Co. v. Watkins*, 198 F.3d at 103 (citing *Little v. MGIC Indem. Corp.*, 836 F.2d 789, 793 (3d Cir.1987)). Furthermore, the court should avoid rewriting the policy language in such a way that it conflicts with the plain meaning of the language. *Imperial Cas. & Indemnity Co.*, 858 F.2d at 131.

The court has reviewed the policy language in this case as noted above. That policy language specifically and unequivocally indicates that the duty to give notice was for an "... occurrence, *(or* a) claim, *(or* a) suit". The policy did not require that notice be given of an occurrence *and* later a claim *and* later a suit. As such, timely notice of the claim or occurrence is sufficient. Moreover, Scottsdale admits that it *had notice of the "claim"*. More specifically, in its brief on p. 4, fn. 1, it states, in pertinent part:

It is undisputed that Bieber had been on notice of a potential claim since early 1996. Metropolitan Entertainment's insurer, CNA, *notified Scottsdale of the claim in July 1996*. Scottsdale retained Jordan & Co. to conduct a limited investigation of Ralph Sparaney's claim. Jordan's assessment was limited to interviewing George Bieber and attending a concert to observe Bieber & Associates' security procedures...

Not only does Scottsdale admit that it had notice of this "claim" as early as 1996, but it attempted to settle the claim with Jeffrey Kornblau, the attorney representing Mr. Sparaney, sometime in July 1997. Further, during the deposition of Udayan De, a claims examiner for Scottsdale, he was asked the following question:

Q: "Sir, in your review of the file would you agree with me that Scottsdale did in fact receive notice of the claim in this matter made by Ralph Sparaney?"

The attorney representing Scottsdale at the time, Mr. Yost, interrupted the answer of Mr. De and stated: "We will stipulate to that."

(Doc. No. 42, Exh. B, pp. 20–21).

Mr. De also referred to a letter dated July 30, (1996) from CNA Insurance Company to Kareem Meyers of Scottsdale. Attached to that letter was a copy of a liability and damage evaluation submitted by Jeffrey Kornblau, the attorney for Mr. Sparaney, along with a demand for $175,-000.000. Among other things, the letter also included a copy of the initial crime report describing the incident that had occurred. (*Id.* at p. 32; Exh. C, letter dated July 30, 1996 and following documentation). It is noteworthy that this letter and attached information were stipulated as received by Scottsdale as part of a package of information sent from CNA. The stipulation was by Mr. Yost, who represented Mr. De at the hearing. (*Id.*, Exh. B, p. 35).

Additionally, Mr. De testified that Scottsdale's notes of November 13, 1996, indicate that settlement discussions took place. Further, those notes indicate that Mr. Kornblau advised Scottsdale's employee that he would file suit in this matter. Further, the Scottsdale file indicates that Scottsdale notified Jordan & Co., their independent investigators, about the offer to settle this suit made by the plaintiff and requested that Jordan & Co. follow-up

with the insured. In fact, according to the sworn testimony of Mr. De, "What it says is that Jordan & Co. will advise the insured that a suit will be forthcoming." (*Id.* at p. 38).

In addition to this, it is clear and undisputed that Scottsdale hired Jordan & Co. to investigate this claim. In fact, the records submitted in these cross-motions for summary judgment (Doc. No. 42, Exh. C) contain a September 20, 1996 letter from Jordan & Company to Scottsdale Insurance in which the very first sentence states:

This letter will serve as an initial report to you with reference to the above-captioned *"claim"*. (referring to: "Insured: Bieber and Associates, Claimant: Ralph Sparaney, Date of Loss: August 27, 1995."). (emphasis added).

Attached to that report was a signed, handwritten statement of the insured George Bieber dated 9–14–96; documents supplied by the insured regarding the concert that evening and personnel; an invoice from Bieber to Metropolitan Entertainment; a diagram of the concert area; photos of the concert area; and a letter forwarded to the insured by Scottsdale's adjustor, Jordan & Co.

The next sentence of Jordan & Co.'s report states that "This assignment was received with instructions to complete a *full investigation with regards to the above-captioned loss.*" (Emphasis added). It thereafter identifies "the insured" as Bieber and Associates with their address. In addition to that, the report documents the date, time, and place of loss, the facts surrounding the loss, an indication by Jordan & Co. of its opinion as to liability (redacted from the papers supplied to the defendants and the court) and related investigation which go on for six pages.

In addition, the records submitted along with the defendants' motion for summary

judgment, and in particular, Doc. No. 42, Exh. C, are replete with examples such as noted above, indicating a clear and unequivocal knowledge of this *occurrence* and *claim* by Scottsdale. All of which predated the formal institution of the lawsuit.

This was also stipulated and agreed to by Scottsdale's attorney, Mr. Yost, when asked at the deposition of Mr. De if he would "stipulate that Scottsdale was aware of the claimant's name, his injuries, the circumstances of the accident, got a written account of the information from Mr. Beaver (sic)".[4] To this request, Mr. Yost answered "Yes. We can stipulate to that." Additionally, the records and testimony of Mr. De indicate that Mr. Bieber was cooperating with Scottsdale "... and during this period of time (September 1996) Scottsdale had an opportunity to investigate the claim and they did so through Jordan & Company". (Doc. No. 42, Exh. B, p. 48).

Not only did Scottsdale investigate this claim prior to the suit being filed, but they agree that this information and investigation was in their custody prior to the running of the statute of limitations in August 1997. (*Id.* at 52–53). In fact, virtually all of the information that's mentioned above was in possession of Scottsdale as of July 30, 1996, a year prior to institution of suit. (*Id.* at 55).

Incredulously, Scottsdale argues in its brief, "Because Scottsdale never received notice of the lawsuit, it was denied the opportunity to litigate the merits of that claim. Therefore, Bieber's inaction plainly caused prejudice to Scottsdale... the prejudice to Scottsdale is not lessened by the fact that Scottsdale had previously been advised of the claim by Sparaney." (Doc. No. 37, p. 16). If one is to read the argument of Scottsdale as it is stated, it appears that the fact that they were given notice of the occurrence and claim long before suit was ever instituted; that Scottsdale hired an investigator who billed numerous hours over the course of many months to investigate the claim; that Jordan & Co. prepared a full report, including a handwritten statement by Mr. Bieber; that Scottsdale engaged in numerous conversations with the plaintiff's attorney, including making at least one offer to settle the case prior to the initiation of suit; and that their own employee Mr. De testified that Scottsdale's records indicate that Jordan & Co. were advised to notify their insured (Bieber) that suit was forthcoming after Sparaney's attorney refused the offer by Scottsdale, that this somehow is inadequate notice of an "occurrence, claim or suit." Further, because Mr. Bieber did not thereafter, again give notice of the lawsuit, Scottsdale should be excused from its obligation to defend and indemnify their insured.

Apparently, Scottsdale wishes this court to declare, that like an ostrich, it can bury its head in the proverbial sand immediately before a suit, it has notice will be filed, and thereafter be excused from its contractual obligation to defend and indemnify. The actions, or rather inactions, of Scottsdale in this case are extremely disturbing. An insurance company, like Scottsdale, has a fiduciary duty to its insured. Specifically, it accepted premiums over a significant period of time in return for providing coverage for occurrences such as these. For Scottsdale now to argue that it was not put on notice of the "occurrence, claim *or* suit" as set forth in its own policy, is an unconscionable argument under the undisputed facts developed in this case. To rule otherwise would be

---

**4.** In the deposition of Udayan De, the court reporter mistakenly referred to George Bieber as "Mr. Beaver".

to allow Scottsdale to avoid its rightful contractual, and even moral, obligation to indemnify and defend its insured, because of its own willful blindness at best, or intentional and reckless indifference at worst. Having received full and complete notice of the claim; hired an investigator to perform a full and complete investigation[5]; received a lengthy written report on that investigation; having had first hand conversations with the plaintiff's attorney concerning settlement in which Scottsdale made a $40,000.00 offer to settle this claim,[6] the position taken by Scottsdale in its brief can only be classified as disingenuous.

Because the court determines that Scottsdale was on notice of the "occurrence (and) claim" within the plain meaning of the language contained in Scottsdale's policy, the cross-motion for summary judgment will be granted in favor of Sparaney and the motion for summary judgment filed by Scottsdale will be denied. Further, because it is clear that Scottsdale was on notice, and therefore had the opportunity to, and did in fact know of the time, place and location of the accident, the parties involved, and had ample time to perform an adequate investigation, learn and understand the full circumstances of the case and had an opportunity to discuss the matter with opposing counsel and attempt settlement before suit was filed, the court finds that Scottsdale was not prejudiced by any failure on Bieber's part to supply subsequent written notice of the filed suit. Scottsdale's apparent willful failure to follow-up on its own activities, discussions and documentation cannot be blamed on any other party but Scottsdale itself.

Because the court is satisfied that the undisputed facts prove that Scottsdale was on notice of the claim and had adequate time to both investigate and defend the legal action had it acted properly as a fiduciary for its insured, it is unnecessary to address the alternative arguments presented by either party. Further, since the written submissions supply ample evidence to support the court's decision, the court does not see a reason to hold, nor has either party requested, oral argument.

**IT IS THEREFORE ORDERED THAT:**

1. Scottsdale's motion for summary judgment (Doc. No. 36) is **DENIED**; and,

2. Sparaney's cross-motion for summary judgment (Doc. No. 41) is **GRANTED**; and,

3. The plaintiff Scottsdale is directed to defend and/or indemnify Bieber & Associates for any claims asserted and judgment received against Bieber & Associates in the underlying state court action originally filed as 97–CV–3976 in the Court of Common Pleas of Lackawanna County;

4. The Clerk of Court is directed to close this case.

---

**5.** See Doc. No. 42, Exh. B, p. 56, Lines 11–14. **6.** See, *Id.*, pp. 55–56, Lines 24–13.